## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PAUL DAVID BAUGH, JR.,** *et al.,* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:22-00329-KD-C** |
| | ) | |
| **AUSTAL USA, LLC,** | ) | |
| **Defendant.** | ) | |

### ORDER

This matter is before the Court on the Plaintiffs' motion for leave of Court to amend the complaint (with proposed first amended complaint) (Doc. 25, Doc. 25-1),[1] the Defendant's consolidated Opposition (Doc. 27), the Plaintiffs' consolidated Reply (Doc. 29) and revised proposed first amended complaint (Doc. 29-1), and the Defendant's consolidated Sur-Reply (Doc. 30).[2]

## I.    Background

On July 14, 2022, five (5) Plaintiffs Paul David Baugh, Jr. (Baugh), David Dudley (Dudley), Carl Skipper (Skipper), James Vela (Vela), and James Anthony Woods (Woods) (Plaintiffs)[3] initiated this action against Defendant Austal USA, LLC (Austal USA) in the Southern District of Mississippi (SDMS) (1:22cv180

---

1 Plaintiffs incorrectly styled the motion as a Second Motion to Amend the Complaint (Doc. 25). Plaintiffs filed similar Motions to Amend in the two (2) other actions with which this case was consolidated **for discovery purposes only** (Abbott, et al., v. Austal USA, LLC (1:22-00267-KD-C) and Allen, et al., v. Austal USA, LLC (1:22-00328-KD-B)). However, despite the parties belief, in this case there was no first amended complaint, and no Order issued regarding a prior amended complaint.

2 The parties have confused matters and hampered this Court's review of the motion by submitting "consolidated" filings, for which they also did not seek leave of Court. In so doing, the parties reference the complaints and allegations in each case as if they are the same in this case, but they are not. The plaintiffs are also not the same. The result is that the briefing often does not speak directly to the complaint at issue in each of the different cases, leaving the Court to scour through the documents to discern the relevant arguments. Thus, "consolidated" filings will not be permitted in these cases. Each party is expected to file a separate filing in each case related to each pending motion (as needed) at issue in that particular case. The cases are not identical and consolidated filings exacerbate confusion and delay resolution of motions.

3 There are only five (5) plaintiffs in this case. This is not a class action.

TBM-RPM). (Doc. 1). On August 22, 2022, this matter was transferred to this Court. (Docs. 8, 9). On September 6, 2022, Austal USA answered the complaint. (Doc. 19). On November 1, 2022, Plaintiffs filed the present motion for leave of Court to amend the complaint (Docs. 25, 25-1), which was amended with an alternative proposed first amended complaint (Doc. 29-1); briefing was complete in December 2022 (Docs. 27, 29, 30).

## II.    Rule 15 Amendments & The Proposed First Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments as follows:

> **a) Amendments Before Trial.**
> **(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within: **(A)** 21 days after serving it, or **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> **(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

The timeframe for amendment as a matter of course has passed: Plaintiffs' Complaint was filed on July 14, 2022 but the motion to amend was filed on November 1, 2022 (more than 21 days after service of the Complaint); and Austal filed its Answer on September 6, 2022 but Plaintiffs did not move to amend within 21 days after service of same (instead waiting until November 1, 2022 to so move). Thus, Rule 15(a)(2) provides the only avenue for amendment. And absent Austal's consent -- which is not given -- leave of Court is required.

Leave should be freely given "when justice so requires" except in the presence of countervailing factors such as undue prejudice to the opposing party and futility of the amendment. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Bartronics, Inc. v. Power-One, Inc., 245 F.R.D. 532, 534 (S.D. Ala. 2007). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[.]" City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1286 (11th Cir. 2015) (citation omitted). Courts "may consider several factors ... including 'undue delay, bad faith or dilatory motive [on the part of the movant], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [and] futility of amendment." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340–1341 (11th Cir. 2014).

Notably, leave to amend may be denied "when such amendment would be futile." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). Per Garrett Inv., LLC v. SE Prop. Hldgs., LLC, 2013 WL 1191237, *2 (S.D. Ala. Mar. 22, 2013):

> ..... a "district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."... "must be dismissed if it fails to state a claim upon which relief could be granted."... the reviewing court must 'accept[ ] the factual allegations in the complaint as true and construe [ ] them in the light most favorable to the plaintiff' *Id.* (citation omitted). Thus, the ... [claim] ... must " 'state a claim for relief that is plausible on its face.'" *Id.* quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570... (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678... (2009). However, the ... [claim] "need not include detailed factual allegations, but it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* quoting *Twombly*, 550 U.S. at 555...

See also e.g., New York Life Ins. Co. v. Grant, 57 F.Supp.3d 1401, 1409-1410 (M.D. Ga. 2014). As stated in Federal Home Loan Corp. v. Brooks, 2014 WL 5410236, *1 (N.D. Ala. Oct. 23, 2014):

> ...the Federal Rules...require only that a complaint ... provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) ... The complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 ... Ultimately, the well-pleaded complaint must present a reasonable inference from the facts it alleges that show a defendant is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). To survive...the allegations ... must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1949...

And per Gulf Coast Mineral, LLC v. Tryall Omega, Inc., 2016 WL 344960, *1 (M.D. Ala. Jan. 27, 2016):

> "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.... (citation omitted). If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U.S. at 556 .... The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

The operative Complaint is the Complaint filed in the SDMS. (Doc. 1). The Complaint alleges two (2) claims against Austal: 1) Title VII religious discrimination and failure to provide religious accommodation (Count I); and 2) negligence and/or gross negligence as to plaintiffs' religious beliefs and constitutional rights (Count II).  (Id.)  Plaintiffs then sought leave of Court to amend the Complaint and file a First Amended Complaint to add **five (5) new defendants** including **Austal Limited, Inc.** (Austal Ltd.) and **Rusty Murdaugh** (Murdaugh), **John Rothwell** (Rothwell), **Patrick Gregg** (Gregg), and **Mike Bell** (Bell), because:

-"Austal [Ltd.]'s actions involve direct guidance on how Austal USA was to engage in handling its unvaccinated workforce[]"

-Austal Ltd.'s "executive leadership ... Rothwell and ... Gregg, played a direct role in determining the non-validity of these accommodations, the lack thereof of any allocation of resources, financial or tangible items, to employees during the pandemic, and also pertaining to the believed-to-be coordinated effort between Austal Limited and Austal USA to universally terminate its employees, regardless of disability status or religious beliefs, in an effort to maintain COVID-19 relief, grants, and government awarded prime contracts[]"

-"Murdaugh ... Rothwell ... Gregg ... and ... Bell ...engaged in a coordinated effort to terminate all of its unvaccinated employees as early as July/August 2021, before the public announcement of EO 14042, in an effort to remain eligible for COVID-19 funding and for governmental grants, such as the $3.3 billion steel ship contract ... these individuals condoned, approved, and supported the universal termination of 100% of its unvaccinated persons ... in October/November 2021 as well as the conduct undertaken by managers/supervisors overseeing Plaintiffs in these facilities. These individuals were the decision makers who unilaterally lifted the "Austal Vaccine Policy" only 4 months later in March 2022 after universally terminating 600 of its employees within that same timeframe[]"

-"... Murdaugh ... Rothwell... Gregg, and ..Bell .... were directly responsible for providing a healthy and safe workplace ... [but] ... exclusively targeting unvaccinated workers as a direct threat to the health and safety of the facility ...  were not acting in the best interest of their company and to protect its employee's health and safety but instead were possibly engaging in self-interested transactions and had coordinated a step-by step plan of action that was predicated on the removal of 100% of its unvaccinated workforce[]"

-"it is believed through direct communications with Austal employees that these individuals may have been creating and submitting 'fake' and/or 'falsified' COVID-19 vaccination passport cards serving as evidence to Austal USA's Human Resources department as fulfilling its obligation despite misrepresenting the actual truth of their vaccination status."

- "these individuals are believed to have engaged in conduct requiring Austal USA's Human Resources members to accept these vaccination requests without inquiring into the veracity of such cards and/or facilitated a process by which Austal employees could bypass these requirements[]" and "were the individuals making the decisions that were implemented among Austal Limited and Austal USA that lead to the universal termination of hundreds of employees."

4

(Doc. 25 at 10-12).

Additionally, Plaintiffs sought leave of Court to amend to add **16 new claims** based on: "newly discovered facts that serve as the basis of this lawsuit in their pursuit of justice under the law and to seek redress under available remedies[;]" and the "discovery of the new factual contentions and information had occurred after Plaintiffs filing of its ..... Complaint[]" based on "facts ... discovered through research into Defendant's business dealings, Defendant's own documentation provided to its employees during Fall 2021, interviewing the total 61 Plaintiffs individually among the 3 lawsuits, and also interviewing former employees[.]" (Doc. 25 at 4, 10). Plaintiffs assert there are newly discovered facts regarding health and safety at Austal; disability and religious discrimination, failure to accommodate, harassment, disparate treatment, and hostile work environment; "facts supporting Alabama law claims[;]" and "general facts that support [these] claims." (Doc. 25). The following **new claims** were alleged against Austal USA, Austal Ltd., Murdaugh, Gregg, Rothwell, and Bell:

-Title VII – Religious Discrimination/Disparate Treatment (Count III);
-Title VII – Hostile Work Environment (Count IV);
-Title VII – Harassment on Religious Grounds (Count V);
- Ala. Code § 22-11B-5 (Alabama's Vaccine Passport Law) (Count VI)
- Alabama invasion of privacy Count VII)
- Ala. Code § 6-5-101 (fraud/misrepresentation of material facts) (Count VIII);
- Ala. Code § 6-5-102 (fraudulent suppression of material facts) (Count IX);
- Ala. Code § 6-5-103 (deceit of material facts) (Count X);
- Ala. Code § 6-5-104 (fraudulent deceit of material facts) (Count XI);
- Alabama civil conspiracy (Count XII);
- Alabama wantonness (Count XIII);[4]
- Alabama breach of contract - implied covenant of good faith (Count XIV);[5]
- Alabama duty of loyalty (Count XV);[6]
- Alabama unjust enrichment (Count XVI);[7]

---

[4] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVII.

[5] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XIII.

[6] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XIV.

[7] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XV.

- Alabama disgorgement (Count XVII);[8] and
- Alabama officer and director liability (Count XVIII).[9]

(Doc. 25-1 at 2-3, 22-35).  In response, Austal USA opposed Plaintiffs' motion based largely on <u>futility</u> and <u>frivolity</u> of the proposed claims and proposed defendants.

In reply, Plaintiffs offer an **<u>alternative</u>** -- filing "an alternative proposed amended complaint" to "remedy any issues" related to pleading standards. (Doc. 29-1).  Thus, Plaintiffs have submitted a revised proposed first amended complaint (Doc. 29-1) in lieu of the initial proposed first amended complaint (Doc. 25-1) explaining that it "best clarifies the position of Plaintiffs and articulate the harm in a manner that is logical, organized and satisfies the [pleading] requirements of .... [Fed.R.Civ.P.] 8(a) and 10(b)." (Doc. 29 at 24). Plaintiffs' proposed new claims in *this* case, as set forth in Doc. 29-1, are Counts III - XVIII (Title VII and Alabama state law claims).  Notably, in Doc. 29-1 Plaintiffs still seek the addition of defendants Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell.  However, Doc. 29-1 alleges the following **18 claims** (including the previously requested 16 new claims), in **<u>revised</u>** fashion, as follows:

-Title VII - Failure to Accommodate - Religious Discrimination against Austal USA (Count I)
-Alabama negligence and/or gross negligence against Austal USA and Austal Ltd. (Count II)
-Title VII – Religious Discrimination/Disparate Treatment against Austal USA (Count III);
-Title VII – Hostile Work Environment against Austal USA (Count IV);
-Title VII – Harassment on Religious Grounds against Austal USA (Count V);
-<u>Ala</u>. <u>Code</u> § 22-11B-5 (Alabama's Vaccine Passport Law) against Austal USA and Austal Ltd. (Count VI)
- Alabama invasion of privacy against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count VII)
-<u>Ala</u>. <u>Code</u> § 6-5-101 (fraud/misrepresentation of material facts) against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count VIII);
-<u>Ala</u>. <u>Code</u> § 6-5-102 (fraudulent suppression of material facts) against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count IX);
-<u>Ala</u>. <u>Code</u> § 6-5-103 (deceit of material facts) against Austal USA, Austal Ltd.., Murdaugh, Gregg, and Bell (Count X);
-<u>Ala</u>. <u>Code</u> § 6-5-104 (fraudulent deceit of material facts) against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XI);

_____

8 Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVI.

9 Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVII.

6

- Alabama civil conspiracy against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XII);

-Alabama wantonness against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XIII);[10]

- Alabama breach of contract - implied covenant of good faith against Austal USA and Austal Ltd. (Count XIV);[11]

-Alabama duty of loyalty against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XV);[12]

-Alabama unjust enrichment against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XVI);[13]

-Alabama disgorgement against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XVII);[14] and

- Alabama officer and director liability) against Austal USA, Austal Ltd., Murdaugh, Rothwell, Gregg, and Bell (Count XVIII).[15]

(Doc. 29-1 (alternative proposed first amended complaint)). Plaintiffs move the Court to grant their motion for leave to file a first amended complaint arguing that denial will unfairly prejudice them as they "will not be afforded a fair and reasonable opportunity to develop an adequate factual record into the viability of new claims and defendants."  (Doc. 29 at 10). To be clear, **the Court's review in this regard is limited to Doc. 29-1 as the proposed First Amended Complaint**.

---

[10] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVII.

[11] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XIII.

[12] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XIV.

[13] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XV.

[14] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVI.

[15] Based on order of appearance, incorrectly numbered by Plaintiffs as Count XVII.

### III.     The Proposed New Defendants
### A.      Austal Limited, Inc. (Austal, Ltd.)

In the revised proposed first amended complaint (Doc. 29-1), Plaintiffs assert <u>only</u> state law claims

against Austal, Ltd. as a proposed party defendant in **Count II** (negligence/gross negligence) and **Counts VI-**

**XVIII.**[16]  Per Plaintiffs, these claims are premised on:

> ... their direct influence over the policy decisions regarding Plaintiffs termination as it is the
> direct parent entity of Austal USA and exercises substantial control over Austal USA's
> decision making and employment decisions.
>
> .... direct financial contributions regarding COVID-19 relief, monetary funding, and general
> allocation of resources to Austal USA in making decisions that impacted thousands of
> individuals who were forced to resign, reprimanded, and/or terminated/separated from the
> business in a span of only a few months.
>
> ... direct guidance on how Austal USA was to engage in handling its unvaccinated workforce
> and to manage the COVID-19 pandemic ... the believed-to-be coordinated effort between
> Austal Limited and Austal USA to universally terminate its employees, regardless of disability
> status or religious beliefs, in an effort to maintain COVID-19 relief, grants, and government
> awarded prime contracts.

 (Doc. 25 at 10).  Per Plaintiffs, Austal, Ltd. as "the parent company ... exercises total and complete control"

over Austal USA, and is "liable for the acts of its subsidiary under a theory of direct or vicarious liability[.]"

(Doc. 29 at 3, 43).

In response, Austal USA argues that Austal Ltd. is separate and distinct legally from its subsidiary as

the parent company of Austal USA, which it also asserts in its briefing filed pursuant to Fed.R.Civ. P. 11(b).[17]

(Doc. 27 at 15). Plaintiffs' case alleges various claims rooted in the COVID-19 vaccine mandate implemented

at their place of employment by their employer Austal USA while they were employees of Austal USA. There

is no allegation that the policy was instituted by Austal Ltd.  And Austal Ltd. was not the Plaintiffs' employer.

---

16 As reflected in Doc. 29-1, Plaintiffs do not seek to amend the complaint to allege federal discrimination
claims against Austal, Ltd. (Doc. 29 at 36 at note 26).

17 Austal USA's Disclosure Statement states only that Austal Holdings, Inc. is the sole member of Austal
USA and that Austal Ltd. is the parent company of Austal Holdings -- not that Austal Ltd. is the parent company of
Austal USA.  (Doc. 22 at 1). That assertion is only set forth in the current briefing.

Plaintiffs' allegations against Austal, Ltd. (*e.g.*, "total control") then, are speculation and conjecture based simply on the existence of this parent-subsidiary relationship.

Contrary to Plaintiffs' position, Austal Ltd. is not liable for the acts of its subsidiary as a matter of law -- under a direct or vicarious liability theory or otherwise -- merely by virtue of this relationship.  Plaintiffs' proposed inclusion of Austal, Ltd. as a party defendant for the above-referenced claims -- *solely because it is the parent company of Austal USA* -- thus lacks merit. "A parent corporation possesses a separate existence and is treated separately from a subsidiary unless there are circumstances justifying disregard of the corporate entity." Matter of Chrome Plate, Inc., 614 F.2d 990, 996 (5th Cir. 1980).[18] See also e.g. Baker v. Raymond Intl., Inc*., 656 F.2d 173 (5th Cir. Sept. 14, 1981) ("[a]s a general rule, a parent company will be considered a separate corporate entity from its wholly owned subsidiary[]"); Perry v. Household Retail Servs. Inc., 953 F. Supp. 1378, 1381 (M.D. Ala. 1996) ("[t]he concept that a corporation is a legal entity existing separate and apart from its shareholders is well-settled law ... The mere fact that one corporation owns all the stock of another corporation does not destroy the separate corporate identities[]" ) (internal citation omitted)).  "As a general rule, a parent company ... is not liable for the conduct of its wholly owned subsidiaries .... except when '1) it is appropriate to pierce the corporate veil; 2) there is apparent or ostensible agency; or 3) there is a joint venture.'"  In re Lett, 2021 WL 4256375, *5 (Bank. N.D. Ga. Sept. 8, 2021).  Additionally, to the extent the inclusion of Austal, Ltd. *could* be construed as Plaintiffs' attempt to assert a veil piercing or alter ego claim, the allegations are insufficiently plead. See, e.g., Stewart v. Bureaus Invest. Group, LLC, 2015 WL 7572312 (M.D. Ala. Nov. 24, 2015) (granting a motion to dismiss as the "pleading fails to include facts sufficient to support the control element of her alter ego claim[]"); Northstar Marine, Inc. v. Huffman, 2014 WL 4853843, *9 (S.D. Ala. Sept. 29, 2014) ("Abundant authority crisscrossing a broad swath of jurisdictions holds that a plaintiff wishing to pierce the corporate veil to hold a particular defendant liable must set forth that intention

---

18 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc),* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981.

in the complaint, and must do so in a manner that, at a minimum, satisfies the notice pleading requirements of Rule 8(a)[]" but "nothing in [the] ... Complaint would reasonably have placed .. [defendant] on notice that the claims against him were rooted in a theory of piercing the corporate veil, much less identified any supporting factual allegations. A reasonable plaintiff reviewing the Complaint would have no reason to believe that veil-piercing was at issue in this case[]"); <u>Forester & Jerue, Inc. v. Daniels</u>, 409 So.2d 830, 832 (Ala. 1982) (reversing summary judgment against individual defendants where, inter alia, "[t]he complaint in the present action did not allege that [they] were the alter ego of the corporation or any other cognizable action for personal liability"). Moreover, jurisdictional issues may exist which would undermine Plaintiffs' endeavor to add Austal, Ltd. based on the allegations before the Court.[19] Thus, that portion of Plaintiffs' motion for leave to amend, to add Austal Limited, Inc. as a defendant, is **DENIED.**

**B.   <u>Individual Defendants</u>**

As to the state law claims asserted in **Counts VII-XVIII**, Plaintiffs seek to add as defendants individuals Rusty Murdaugh, John Rothwell, Patrick Gregg, and Mike Bell because:

> .... these individuals engaged in a coordinated effort to terminate all of its unvaccinated employees as early as July/August 2021, before the public announcement of EO 14042, in an effort to remain eligible for COVID-19 funding and for governmental grants, such as the $3.3 billion steel ship contract ... these persons are the individuals who controlled, implemented, and enforced the policies, practices, and procedures that took place in a seemingly coordinated manner from Summer to Fall 2021 ... these individuals condoned, approved, and supported the universal termination of 100% of its unvaccinated persons among Austal USA ..... in October/November 2021 as well as the conduct undertaken by managers/supervisors overseeing Plaintiffs in these facilities. These individuals were the decision makers who

---

19 As summarized in <u>Herederos De Roberto Gomez Cabrera, LLC v. Teck Resources Ltd</u>., 43 F.4th 1303, 1312 (11th Cir. 2022):

> a subsidiary's contacts can be attributed to its parent company for personal-jurisdiction purposes when "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without *any semblance of individual identity*." *United States ex rel. v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) (quotation marks and citation omitted) (emphasis added). In other words, a subsidiary's contacts can justify jurisdiction over the parent when the subsidiary is a mere "alter ego" of the parent company. *See Daimler*, 571 U.S. at 134, 134 S.Ct. 746; *MIC*, 987 F.3d at 1354; *see also Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002).

unilaterally lifted the "Austal Vaccine Policy" only 4 months later in March 2022 after universally terminating 600 of its employees within that same timeframe.

... these individuals were directly responsible for providing a healthy and safe workplace; however, as aforementioned facts regarding health and safety are outlined, there were numerous instances in which these individuals could have addressed as opposed to exclusively targeting unvaccinated workers as a direct threat to the health and safety of the facility. The outlined facts suggest that Rusty Murdaugh, John Rothwell, Patrick Gregg, and Mike Bell were not acting in the best interest of their company and to protect its employee's health and safety but instead were possibly engaging in self-interested transactions and had coordinated a step-by step plan of action that was predicated on the removal of 100% of its unvaccinated workforce.

... through direct communications with Austal employees that these individuals may have been creating and submitting "fake" and/or "falsified" COVID-19 vaccination passport cards serving as evidence to Austal USA's Human Resources department as fulfilling its obligation despite misrepresenting the actual truth of their vaccination status. Additionally, these individuals are believed to have engaged in conduct requiring Austal USA's Human Resources members to accept these vaccination requests without inquiring into the veracity of such cards and/or facilitated a process by which Austal employees could bypass these requirements.

... [they] ... were the individuals making the decisions that were implemented among .... Austal USA that lead to the universal termination of hundreds of employees.

(Doc. 25 at 10-12). In response, Austal argues futility as follows:

... the state law claims attempt to address the same underlying conduct forming the basis of the Title VII and ADAAA claims. Title VII and the ADAAA make clear that individual employees' actions form a cause of action against the employer, not the individual. *See Busby,* 931 F.2d at 772; *Mason, supra*. Even assuming ... there was a basis for the claims themselves, or for individual liability, Plaintiffs' proposed ... Amended Complaint fails to identify any specific actions of the newly named individual defendants and instead makes vague assertions .... The specific counts of the proposed ... Amended Complaint do not identify particular conduct committed by particular individual defendants and, as such, fail to meet the basic notice pleading requirements set out by this Court in its September 22, 2022 Order. (Doc. 25, PageID.412) ... Plaintiffs' attempts to add these individual defendants is futile ....

(Doc. 27 at 13-14). The Court addresses the proposed inclusion of these individual defendants, as to each related count, in detail below.

**IV.**   **The Proposed New Claims**

**A.**   **New Proposed Title VII Claims (Counts III, IV, V) against Austal USA**

Plaintiffs' proposed new Title VII claims against Austal USA are: Religious Discrimination/Disparate Treatment (Count III); Hostile Work Environment (Count IV); and Harassment on Religious Grounds (Count V).  In support, Plaintiffs assert that they "timely filed charges of discrimination" with the EEOC in relation to the alleged discrimination experienced based on "sincerely held religious beliefs." As grounds to amend the complaint to allege these new Title VII claims, Plaintiffs reference the following:

> -Disparaging comments, jokes, and vulgar language targeted exclusively at unvaccinated employees on the basis of their religion and/or disability ... statements such as discrediting their beliefs and/or disabilities because of having "tattoos", stating "if you don't like the way you're treated, there is the fucking door," and also statements from Rusty Murdaugh like "Oh wow, so everyone is religious now?"
> -Ostracizing unvaccinated workers in the workplace, precluding Plaintiffs from joining these meetings, and/or Austal employees holding meetings without Plaintiffs knowledge in secret.
> -Holding meetings with just unvaccinated persons where Austal executives eliciting jokes at disparaging comments at these individuals on the basis of their religious and medical beliefs.
> -Placement of vaccine propaganda around the workplace.
> -Spraying Lysol on Plaintiffs as they walked around the facility and/or spraying their desks every time Plaintiffs got up from their desk or specific work area.
> -Intentionally stealing and/or hiding Plaintiffs toolboxes/materials and refusal to review the footage to identify the culprit and refusal to compensate employees for their loss of materials
> -Vaccine Policy that was announced almost 1 month after EO 14042 was announced that only gave Plaintiffs 3 weeks to get vaccinated against their religious beliefs and/or medical capabilities.
> -Withholding of Plaintiffs earned annual bonuses, which were to be given exactly 2 days after Austal's termination of unvaccinated employees. As well as Austal managers/supervisors using this fact as a reason to coerce unvaccinated workers to receive the vaccine.
> -Changing Plaintiffs status from W-2 employees to 1099 employees so that they do not receive unemployment benefits.
> -Austal receives federal funding in the form of contracts and has received COVID-19 relief funds and is bound to the requirements of such.
> -Refusal to meet and/or engage in any discussions with Plaintiffs or any unvaccinated person regarding their exemption requests.
> -Universally denying all unvaccinated employees accommodation requests, even those employees that were working from home and have been able to work from home successfully without incident, reprimand, or any other issue for almost 2 years.

(Doc. 25 at 6-7).

However, in so doing, there is no discussion of the foregoing *in relation to any of the five (5) Plaintiffs in this case -- i.e.*, that the foregoing is what *they* experienced.  And in the proposed first amended complaint, Plaintiffs' Title VII allegations in Counts I, II, and III, are likewise generally alleged. Plaintiffs fail to allege the details of *their* particular Title VII violations (*e.g.*, that employer A discriminated against one or all of the five (5) Plaintiffs by doing X on this date).

In an effort to have their motion to amend granted, Plaintiffs explain: "[w]hile Plaintiffs did not specifically articulate each discrete act of alleged discrimination against them while they were being not being accommodated in their respective Charges of Discrimination, these alleged discrete acts were occurring simultaneously at the time of Defendant's universal decision to deny every employee's religious and/or medical exemption, refusal to accommodate these individuals, and subsequent decision to universally terminate these individuals. As such, these additional claims are reasonably related to one another." (Doc. 29 at 37) (emphasis omitted). Plaintiffs assert that their claims arise from the "same facts, transaction, and occurrences" relating to allegedly discriminatory acts by Austal USA regarding its vaccine policy. In support, Plaintiffs cite a case in which a plaintiff, unrepresented by counsel, "may not know to specifically list each and every discrete act" and so courts look to whether the claims alleged in the case "reasonabl[y] relate to the facts in an EEOC Charge. (Doc. 29 at 37 at note 27 (citing Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)).  This citation is inapposite as the five (5) Plaintiffs in this case have been represented by counsel since this action was initiated. Additionally, Plaintiffs argue that this Court's "task [when assessing futility in discrimination claims and the manner in which such are plead in a complaint] requires the ... [undersigned] to *first review* the Charge of Discrimination that the plaintiff filed with the EEOC[.]" (Doc. 29 at 38).  However, none of the five (5) Plaintiffs' EEOC Charges have been filed in this case for the undersigned to review and discern what claims can reasonably be expected to grow out of same.

Moreover, in its Sur-Reply Austal (similarly) argues that the Plaintiffs' EEOC Charges show that the new Title VII claims in Doc. 44-1 are not "reasonably expected to grow" from same, citing Doc. 42-1 at Exhibit

A (as the EEOC Charges) and Doc. 44.  (Doc. 30 at 6-7). However, as this is a consolidated Sur-Reply, those Document numbers are not documents filed in *this* case, and are not EEOC Charges for the five (5) plaintiffs in *this* case. And Austal did not file the EEOC Charges for the Plaintiffs in this case with its Sur-Reply, though it suggests that it did (Doc. 30 at 7 (referencing "Exhibit A")).  In this case, Doc. 42 is a Notice related to Rule 30 and Rule 34 (and has no Doc. 42-1), Doc. 44 is a Notice of serving a second set of discovery and supplementation, and there is no Doc. 44-1. Likewise, Austal USA argues that allowing Plaintiffs to amend their complaint to allege these new Title VII claims would be improper because such were not alleged in their EEOC charges, do not grow out of the scope of the EEOC investigation, and so they have not exhausted their administrative remedies for same.  (Doc. 30 at 7-8).  Austal USA makes no assertions specific to *this case's Plaintiffs*.  As such, Austal USA has not asserted how these new Title VII claims should be disallowed as to *these* plaintiffs in *this* case. And the Court cannot determine whether the proposed Title VII claims grow out of the EEOC Charges filed by any of the five (5) Plaintiffs because they have not been filed in this case. At best, the Court only has Plaintiffs' allegation -- submitted by counsel under Fed.R.Civ.P. 11(b) -- that they filed Charges of Discrimination with the EEOC "with regard to their religious beliefs under Title VII[.]"  (Doc. 29 at 36).  The foregoing underscores the problems inherent in filing "consolidated" responses to the Court in *different* cases with *different* claims.

As such, the Court turns to the Rule 15(a)(2) considerations for the new Title VII claims.  There is no evidence that the amendment is the product of undue delay and Austal has not sufficiently alleged undue prejudice.  While permitting the amendment will likely alter the scope of discovery among the parties and alter deadlines, such does not necessarily equate with undue prejudice.  Additionally, there is no evidence of bad faith or dilatory motive on Plaintiffs' part or repeated failures to cure deficiencies by amendments previously allowed *in this case*. So, the Court considers whether the amendment is futile. Austal argues that the claims asserted are not warranted by existing law yet fails to specify how the proposed new Title VII claims are futile

14

(apart from referencing irrelevant and unrelated EEOC Charges for plaintiffs in a different cases). There is no support for a futility finding at this juncture.

Upon consideration, Plaintiffs' motion for leave to amend is **GRANTED** as to the Title VII claims against Austal USA (Religious Discrimination/Disparate Treatment (Count III), Hostile Work Environment (Count IV), and Harassment on Religious Grounds (Count V)**)** on the condition that the Plaintiffs file a copy of their EEOC Charges with a new amended complaint (as set forth below).

**B.     New Proposed Count VI - Ala. Code § 22-11B-5 (Alabama's Vaccine Passport Law) against Austal USA**[20]

As alleged, Plaintiffs were terminated on **October 27, 2021** after refusing to receive one of the three experimental Covid-19 vaccines.  (Doc. 1 at 10). Plaintiffs move to amend the complaint to add a Section 22-11B-5 Ala. Code claim against Austal USA for violating Alabama's vaccine passport law because "Austal has been engaging in a policy and practice of refusing to allow admission of customers and/or related persons from entering the named Defendants facilities and/or locations up until March 30, 2022, when the named Defendants announced a revocation of all COVID-19 requirements, including 'customers.' Once terminated on the premises, the named Plaintiffs became potential customers and/or visitors."  (Doc. 29-1 at 31).

Section 22-11B-5 provides:

(d) An entity or individual doing business in this state may not refuse to provide any goods or services, or refuse to allow admission, to a **customer** based on the **customer's** immunization status or lack of documentation that the **customer** has received an immunization.

Ala. Code. § 22-11B-5(d) (emphasis added).  In response, Austal USA argues that Ala. Code § 22-11B-5 does not apply to the rights of individual employees (referencing the Alabama Attorney General's July 26, 2021 Public Notice).  (Doc. 30 at 8).

Plaintiffs clearly allege that they were employees of Austal USA. The Attorney General's Public Notice regarding Section 22-11B-5(d) states that the subsection "does not address employer-employee relationships

---

20 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

... it cannot be read to prohibit private employers from requiring employees to vaccinate against COVID-19." Nevertheless, Plaintiffs argue their claims are not futile "because once Plaintiffs were terminated and separated from Austal USA, these individuals became 'customers' and/or 'visitors' of the facility as they were no longer employed by Austal and as they were removed from the facility... some Plaintiffs were allowed to return to collect the remainder of their belongings after separation....these individuals were now classified as 'customers' and/or 'visitors' on Austal's premises."   (Doc. 29 at 43-44).   Plaintiffs add that because (following termination/separation) some plaintiffs had to return on site to Austal USA to interview for re-employment, they became "customers." (Id.) However, the statute addresses "customers" -- not visitors or former employees -- and Plaintiffs have provided no support for their assertion (statutory history, case law, etc.). This appears to be Plaintiffs' unilateral characterization of the statute, unsupported by any reference to statute, case law, etc. And notably, Plaintiffs do not even link these allegations to the five (5) Plaintiffs in this case, who do not even assert that _they_ returned onsite after termination and/or that _they_ sought re-employment.  In sum, this claim lacks facial plausibility. Thus, Plaintiffs' motion for leave to amend the complaint, to allege a violation of Alabama's vaccine passport law against Austal USA, is **DENIED** as futile.

## C.    New Proposed Count VII (Invasion of Privacy)[21] against Austal USA/individuals

Plaintiffs move to amend the complaint to add an invasion of privacy claim against Austal USA, Murdaugh, Rothwell, Gregg, and Bell, alleging as follows:

> Plaintiffs' .... confidential medical information, such as their vaccination status, medical complications, and general medical information, were repeatedly disclosed publicly through a multitude of mediums that was permitted, endorsed, and/or permitted by Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell.

> The named Defendants' actions infringed upon the **intrusion upon seclusion** theory based upon their wrongful intrusion into Plaintiffs' private activities in such a manner that it caused severe outrage, mental suffering, shame, and/or humiliation to Plaintiffs and would otherwise cause such effects to be felt by a person of ordinary sensibilities.

---

21 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

Plaintiffs' confidential medical information was **shared publicly** by the named Defendants, its managers, its supervisors, and/or executives in an effort to coerce and otherwise compel Plaintiffs to comply with its vaccination requirement. The named Defendants conduct of **public display** of Plaintiffs' medical information regarding their medical capabilities, medical preferences, and medical status **violates the ordinary decencies** recognized in our society.

The named Defendants conduct placed Plaintiffs in such a negative light in its facilities and the community by disclosing such sensitive information and weaponizing the information to ostracize Plaintiffs from other employees in Austal's facilities. These **Plaintiffs were placed in false light** so that these persons may feel left out of the group and cave-in to peer pressure by getting a medical procedure against their will. **Disclosure of such private facts was used for its own commercial benefit in this respect.**

Defendants Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell played a role in allowing and encouraging this **public disclosure** of the private facts of their employees and required Austal Limited and Austal USA's HR Department and public relations department to undertake such actions to further embarrass, harass, and/or coerce Plaintiffs to receive the vaccine.

(Doc. 29-1 at 31-32 (emphasis added)).

In response, Austal USA argues the basis for this claim -- the alleged improper disclosure of private medical information (Plaintiffs' vaccination status) --  is duplicative and that this claim must be a federal claim (ADAAA), not a claim under state law, because 42 U.S.C. § 12112(d) addresses an employer's unlawful disclosure of medical information. In so doing, Austal cites unhelpful docket entries and EEOC Charges that were not filed in this case. (Doc. 30 at 9). However Plaintiffs contend the invasion of privacy claim is separate from the federal claims, is not bound by the limits of their EEOC Charges, and "such claim is certainly not preempted" or "assumed by Title VII and the ADA." (Doc. 29 at 46). Additionally, Plaintiffs *appear* in their briefing (but not the proposed complaint) to limit this claim to intrusion on physical solitude or seclusion. (Doc. 29 at 45-46).

Historically, there are four (4) categories of invasion of privacy in Alabama: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Bosarge v. Mobile Area Water & Sewer Serv., 2020 WL 2820201, *30 (S.D. Ala. May 29, 2020); Butler v. Town of Argo, 871 So.2d 1, 12 (Ala. 2003); Ex parte

Birmingham News, Inc., 778 So. 2d 814, 818 (Ala. 2000); Johnston v. Fuller, 706 So. 2d 700, 701 (Ala. 1997).

However, recently in Rivers v. Noom, Inc., 2023 WL 359501, *4-5 (N.D. Ala. Jan. 23, 2023) (finding the ARPA "abrogates the common law tort of commercial appropriation[]" and concluding that there are now three (3) categories of common law and one (2) statutory basis for invasion of privacy):

> In Alabama, common law governs the tort of invasion of privacy. It "consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Hogin v. Cottingham*, 533 So. 2d 525, 528 (Ala. 1988).

> In 2015, however, the Alabama Legislature passed the Alabama Right of Publicity Act ("ARPA") "to define the right, the elements and scope of liability ... define the remedies available, and set forth defenses" for the commercial appropriation of a person's identity—*i.e.*, the fourth of the four distinct common law variants of invasion of privacy. Ala. Act 2015-188. The ARPA said nothing about the three other variants.
>
> ***
>
> ... As explained, the Alabama Legislature passed the ARPA in 2015 to statutorily define commercial misappropriation. That means the common law tort of commercial appropriation—*i.e.*, the fourth of the four common law variants of invasion of privacy—"continue[d] in force" until 2015, when it was "altered or repealed by the Legislature." *Id.* The remaining three common law variants—*i.e.*, wrongful intrusion upon solitude, publicity given to private life, and false light—however, remain viable because "[a] statute which is an innovation on the common law will not be extended further than is required by the letter of the statute." *Alabama v. Grant*, ––– So. 3d ––––, 2022 WL 4115310, at * 4 (Ala. Sept. 9, 2022).

> That Alabama now recognizes one statutory and three (not four) common law variants of invasion of privacy is perhaps best shown by the Alabama Pattern Jury Instruction Committee altering the pattern instructions for invasion of privacy in 2016 to replace the fourth common law variant with the new statutory claim. *See* Alabama Pattern Jury Instructions §§ 35.00 (listing the four available theories); 35.11—35.16 (instructions on the ARPA claim).

The ARPA, Section 6-5-772(a) (Liability for use or indicia of identity without consent) provides:

> Except as otherwise provided in this article, any person or entity who uses or causes the use of the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, or for purposes of fund-raising or solicitation of donations, or for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights.

Ala. Code § 6-5-772(a) (highlight added). Regardless, Plaintiffs' proposed claim is not limited to the unlawful disclosure of medical information as Austal USA suggests.

18

**First, intrusion into the Plaintiffs' solitude or seclusion.** As summarized in Majdalani v. Auburn Univ., 2022 WL 4596349, *14 (M.D. Ala. Sept. 7, 2022):

> To prove this type of invasion of privacy, Plaintiff must show that Defendants "intentionally intrude[d], physically or otherwise, upon [his] solitude or seclusion ... or his private affairs or concerns" in a manner that "would be highly offensive to a reasonable person." *Johnston*, 706 So. 2d at 702 (quoting Restatement (Second) of Torts § 652B (Am. L. Inst. 1977)). The Supreme Court of Alabama has acknowledged examples of intrusion upon seclusion including "wiretapping or eavesdropping" and "opening private mail or examining a private bank account." *Id.* (quoting Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977)). The Restatement, which the Alabama Supreme Court has relied upon, notes further examples, including "searching [a man's] safe or his wallet ... or compelling him by a forged court order to permit an inspection of his personal documents." Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977). The Alabama Supreme Court has added, "[I]f the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur." *Id.* (citing *Hogin v. Cottingham*, 533 So. 2d 525 (Ala. 1988)).

See also e.g., March v. Best Buy Stores, LP, 111 F.Supp.3d 1236 (N.D. Ala. 2015) (same); Phillips v. Smalley Maint. Servs., 435 So.2d 705 (Ala.1983) (officially adopting the SECOND RESTATEMENT'S definition) (quoting THE RESTATEMENT (SECOND) OF TORTS, § 652B (1977)).

Plaintiffs allege that "confidential medical information, such as their vaccination status, medical complications, and general medical information, were repeatedly disclosed publicly through a multitude of mediums that was permitted, endorsed, and/or permitted by Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell[]" and seek "redress for actions .... that infringed upon the intrusion upon seclusion theory based upon their wrongful intrusion into Plaintiffs' private activities in such a manner that it caused severe outrage, mental suffering, shame, and/or humiliation to Plaintiffs and would otherwise cause such effects to be felt by a person of ordinary sensibilities." (Doc. 29 at 45; Doc. 29-1 at 31). However, there are no specific allegations as to these defendants' unlawful disclosure of *any of the five (5) Plaintiffs'* "vaccination status, medical complications, and general medical information" and/or "publicly [sic] display of Plaintiffs' medical information regarding their medical capabilities, medical preferences, and medical status." Plaintiffs' allegations are general, *not specific to the Plaintiffs in this case*, and so precisely *what* the defendants did to *these* Plaintiffs is unknown. See, e.g., Shuler v. Garrison, 2017 WL 191267, *22 (N.D. Ala. Jan. 13, 2017)

19

("even when taken as true, the allegations .... are not sufficient .... because they do not allege any action by the named defendants themselves that invaded *Plaintiffs'* privacy[]"and "the tort of invasion of privacy requires a plaintiff plead that a defendant actually intruded into a private place[]") (emphasis added).

Given the individualized and fact-dependent nature of this category of invasion of privacy, the conclusory allegations are insufficient. But this lack of specificity does not support futility. Instead, it supports amendment which should be "freely given" in the absence of countervailing factors.  Due to the absence of countervailing factors, Plaintiffs' motion for leave to amend to file a First Amended Complaint is **GRANTED** as to this claim on the condition that Plaintiffs shall file, on or before **April 24, 2023,** a new first amended complaint which includes sufficient factual allegations specific to the Plaintiffs and each of the defendants' purported invasion of privacy acts and/or conduct.

**<u>Second, giving publicity to private information about the plaintiff that violates ordinary decency</u>**.

As summarized in <u>Majdalani</u>, 2022 WL 4596349 at *15:

> To succeed on a claim against a defendant for making private information public, a plaintiff must show that another publicized "a matter concerning the private life of" the plaintiff, and "the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Johnston*, 706 So. 2d at 703 (quotation marks omitted) (quoting Restatement (Second) of Torts § 652D). The Alabama Supreme Court adopted the Restatement's definition of publicity, which states, "[p]ublicity ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quotation marks omitted) (quoting Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977)).

<u>See</u> <u>also</u> <u>e.g.</u>, <u>Facebook, Inc. v. K.G.S.</u>, 294 So.3d 122, 144-145 (Ala. 2019) (same).

Plaintiffs allege that their confidential medical information was "shared publicly by the named Defendants, its managers, its supervisors, and/or executives in an effort to coerce and otherwise compel Plaintiffs to comply with its vaccination requirement[]" and the defendants' "conduct of public display of Plaintiffs' medical information regarding their medical capabilities, medical preferences, and medical status violates the ordinary decencies recognized in our society[.]"  (Doc. 29-1 at 32). Just as with the first category,

20

there are no allegations by the Plaintiffs as to what the defendants did specifically to them (the five (5) Plaintiffs in this case).  Regardless, the lack of "publicity" (per Alabama law) renders this claim futile.

In Alabama to be "publicized" means more than the Plaintiffs allege:

... For tortious invasion of privacy, the Alabama Supreme Court has adopted the language of the Second Restatement of Torts, which provides in relevant part that, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy ..." *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000). To achieve publicity, the statement must "reach the public." *Id.* It is not enough to expose information to a single person or a small group of persons. It must be "sufficient to give publicity within the meaning of the term." *Id.* (giving examples including publication in a newspaper, magazine, or handbill, or broadcast over a radio).

The communication at issue was primarily to Plaintiffs' coworkers. The Supreme Court of Alabama has held repeatedly that informing several coworkers is not sufficient. *See Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 736 (Ala. 2001) (informing a coworker who then informed two others was insufficient for publication.); *Butler v. Town of Argo*, 871 So. 2d 1, 14 (Ala. 2003) (discussion of issue with five or six people in the office of the city clerk was insufficient to constitute publication.) Indeed, informing the entire office is insufficient for publication. *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1573 (N.D. Ala. 1996) (holding "there is no evidence that the comments allegedly made by Ms. Alford and Mr. Nelson were made outside the confines of Vulcan, therefore, Pouncy could not have been subjected to publicity ..."). Alabama law even immunizes communications among employees from being considered publication when they occur "in the course of transacting the company's business and in the proper scope of the employee's duties." *Schrimsher v. Liberty Nat. Life Ins. Co.*, 655 So. 2d 986, 988 (Ala. 1995)....

McCreight v. AuburnBank, 2020 WL 1061675, *3 (M.D. Ala. Mar. 4, 2020).

Plaintiffs allege that the Defendants' actions occurred "at its [Austal USA] facilities and [in] the community by disclosing such sensitive information and weaponizing the information to ostracize Plaintiffs from other employees in Austal's facilities." (Doc. 29-1 at 32).  In otherwords, Plaintiffs allege that the Defendants' communication was primarily amongst themselves, to co-workers, to the Austal USA community, and at the Austal USA facilities.  Such does not constitute publication under Alabama law to support this invasion of privacy claim, as a matter of law. Thus, Plaintiffs' motion for leave to amend, to allege a "giving publicity to private information about the plaintiff that violates ordinary decency invasion of privacy claim" against Austal USA and the individual defendants, is **DENIED** as futile.

21

**Third**, "**putting the plaintiff in a false, but not necessarily defamatory, position in the public eye.**" As noted in Bosarge v. Mobile Area Water & Sewer Serv., 2020 WL 2820201, *30 (S.D. Ala. May 29, 2020):

> Applying Restatement (Second) of Torts § 652E (1977) and the following comments, [the Alabama Supreme Court] has adopted the following definition for "false light" invasion of privacy:
>> " One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>>> "'(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>> "'(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'"
> *Schifano v. Green Cty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993) (emphasis omitted) (quoting Restatement (Second) of Torts § 652E (1977)). A false-light claim does not require that the information made public be private; instead, the information made public must be false. See Restatement (Second) of Torts § 652E cmt. A. (1977).
>
> Additionally, it is integral to a false-light claim that the untrue information be publicly communicated. Comment a. to § 652E states, "The rule stated here is, however, limited to the situation in which the plaintiff is given publicity. On what constitutes publicity and the publicity of application to a simple disclosure, see § 652D, Comment a., which is applicable to the rule stated here."
>
> Comment a. to § 652D states:
>
>> " 'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used in § 577 in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
>>
>>> "Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication."
>
> See *Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d [735,] 739 [ (Ala. 2001) ]; *Johnston []*, 706 So. 2d at 703; *Ex parte Birmingham News, Inc.*, 778 So. 2d [at] 818 [ ].
> *Butler v. Town of Argo*, 871 So. 2d 1, 12-13 (Ala. 2003).

Thus, "[i]n order to prove a false light invasion of privacy claim, Plaintiff must show that Defendants (1) publicized (2) false information about another that (3) would be highly offensive to the reasonable person and (4) either knew or acted in reckless disregard as to the falsity of the information. *See Regions Bank v. Plott,* 897 So.2d 239, 244 (Ala. 2004)." McCreight v. AuburnBank, 2020 WL 1061675, *3 (M.D. Ala. Mar. 4, 2020).

At the outset, the information about Plaintiffs' COVID-19 non-vaccination status was apparently not false. And Plaintiffs allege no false information was publicized by the Defendants, but rather that the Defendants publicized *true* information -- that they were not vaccinated and would not agree to be vaccinated in keeping with Austal USA's policy. A false light claim "*does* require that 'the information .. .be *false*.' 871 So.2d at 12. See *Restatement (Second) of Torts* § 652E, cmt. a. (1977). Thus, falsity is the *sine qua non* of a false-light claim[] ... 'falsity' is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof. Ray, *Let There be False Light,* 84 Minn. L.Rev. at 736 ('false light plaintiffs therefore bear [a] heavier burden [than defamation plaintiffs] because they must make an affirmative showing of falsity rather than leaving it to defendants to justify the offensive statement')[.]" Regions Bank v. Plott, 897 So.2d 239, 244 (Ala. 2004) (emphasis in original).

Even assuming *arguendo* that there was false information (which would seemingly be contrary to the premise underlying Plaintiffs' entire case), as noted *supra* to be "publicized" means that such information must "reach the public" and not be limited to informing coworkers or communications among employees. McCreight, 2020 WL 1061675 at *3. "'Publicity' is defined by communicating the false statements 'to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000). That is, communication to a 'single person or even to a small group of persons' is insufficient for publicity. *Id."* Gray v. Koch Foods, Inc., 580 F.Supp.3d 1087, 1136 (M.D. Ala. Jan. 14, 2022). See also e.g., Tidmore v. Bank of Am., N.A., 2017 WL 467473, *9 (N.D. Ala. Feb. 3, 2017) (same).  Because Plaintiffs allege only that the Defendants' actions occurred "at its [Austal USA] facilities and [in] the [Austal] community[,]" the alleged communication was primarily amongst themselves,

to co-workers, to the Austal USA community, and at the Austal USA facilities. Such does not constitute publication under Alabama law to support a false light invasion of privacy claim. Thus, Plaintiffs' motion for leave to file an amended complaint, as to false light invasion of privacy against Austal USA and the individual defendants, is **DENIED** as futile.

**Fourth, "appropriating some element of the plaintiff's personality for a commercial use."** As set forth *supra* in Rivers, 2023 WL 359501 at *5, that Court found that Section 6-5-772(a) abrogated the fourth category of Alabama's common law invasion of privacy and provides:

> .... any person or entity who uses or causes the use of the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, or for purposes of fund-raising or solicitation of donations, or for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights.

Ala. Code § 6-5-772(a) (highlight added). This common law fourth category of "unauthorized use of plaintiff's name for commercial purposes" was established in Norris v. Moskin Stores, Inc., 132 So.2d 321, 322-323 (Ala. 1961) and rooted in PROSSER, LAW OF TORTS 637–39 (2nd ed. 1955) and Birmingham Broadcasting Co. v. Bell's 68 So.2d 314 (Ala. 1953) (held "broadcasting company used professional name and reputation of announcer without permission of announcer and was unjustly enriched). "The privacy of a public personage may not be lawfully invaded by the use of his name or picture for commercial purposes without his consent, not incidental to an occurrence of legitimate news value ... 'It has become a custom in the press to publish the pictures of prominent public men; but it is a very different thing for a manufacturer to use without authority such a man's picture to advertise his goods[.]'" Bell's, *supra*. The Court focused on the "alleged unauthorized use of his professional name and reputation" and the lower court charged the jury on "the essentials .... (1) plaintiff's property in his name and reputation, and (2) by the unauthorized use of that name for defendant's own purposes, defendant was enriched, and (3) in equity and good conscience plaintiff should be awarded a verdict to compensate him for such unauthorized use of his property, which is his name and reputation: that the damages are compensatory only." Id. at 320. "[T]he right of privacy ... [includes] ... "the right of a person

24

to be free from .... 'the unwarranted appropriation or exploitation of one's personality....'' Id. at 323.[22] See also RESTATEMENT (SECOND) OF TORTS § 652C (1977) ("In order that there may be liability under the rule ... the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness .... Until the value of the name has in some way been appropriated, there is no tort[]").

And ARPA, Section 6-5-772(a) provides that "any person or entity who uses or causes the use of the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, or for purposes of fund-raising or solicitation of donations, or for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights." Ala. Code § 6-5-772(a) (highlight added).

Whether statutory or common law, there are no allegations supporting a granting of Plaintiffs' motion to assert this claim. Plaintiffs allege the Defendants disclosed their "private facts" which were then "used for its own commercial benefit in this respect" as those facts were "used to coerce Plaintiffs and other dissenting employees of the Austal Vaccine Policy so that Austal may report higher percentages of COVID-19 vaccination records among its employees so that it may remain eligible for hundreds of millions in COVID-19 funding from the government and billions in federal awarded prime contracts."  (Doc. 29 at 45-46; Doc. 29-1 at 31-32). Plaintiffs do not reference the statute.  Additionally, Plaintiffs do not allege any use or causing the use of their "indicia of identity" by the Defendants. Moreover, there are insufficient allegations as to _how_ some element of the Plaintiffs' "personality" was purportedly appropriated by the Defendants for commercial use. Further, Plaintiffs make no allegations in keeping with the exemplar criteria _supra_ (e.g., Plaintiffs' names or

_____

22 "It is the duty and business of the courts .... to find some point .... where the wonders of modern civilization which speed information and intelligence may be utilized and yet where the ordinary sensibilities of the individual may be protected from vulgar attention and the advance of selfish commercial interests."  Smith v. Doss, 37 So.2d 118, 120 (Ala. 1948).

pictures were used to advertise Austal's goods, Plaintiffs' names and reputations were used unauthorized by Austal, Austal appropriated to its own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the Plaintiffs' names or likenesses, etc.). Rather, Plaintiffs allege "Austal USA disclosed their non-vaccination status "so that these persons may feel left out of the group and cave-in to peer pressure by getting a medical procedure against their will. Disclosure of such private facts was used for its own commercial benefit in this respect." (Doc. 29-1 at 32).  Essentially, Plaintiffs unilaterally allege that their non-vaccinated status, as reported to Austal USA, equates to appropriation for commercial use as a matter of law. The Court cannot agree based on the allegations and case law.  There is no discernible facial plausibility for this claim, as alleged.  Thus, Plaintiffs' motion for leave to amend, as to commercial appropriation invasion of privacy against Austal USA and the individual defendants, is **DENIED** as futile.

**D.**   **New Proposed Count VIII (Ala. Code § 6-5-101 fraudulent misrepresentation); Count IX (Ala. Code § 6-5-102 fraudulent suppression); Count X (Ala. Code § 6-5-103 deceit); Count XI (Ala. Code § 6-5-104 fraudulent deceit)[23] against Austal USA/individuals**

Plaintiffs' proposed statutory fraud allegations against Austal USA, Murdaugh, Rothwell, Gregg, and Bell consist of the following:

> Defendants made misrepresentations willfully and/or recklessly to their employees regarding COVID-19 relief funding, willingness to engage in the interactive process for accommodations, statistics or data reported weekly from the facilities, veracity that everyone in the company was abiding by the Vaccination Policy honestly, and/or as to the specific reasons for rejection of exemption requests and proffered explanations justifying discharge.

> Such misrepresentations and omissions of material facts were reasonably and detrimentally relied upon by ..... Plaintiffs.
>  ***
> As a result of the actions of the named Defendants, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(Doc. 29-1 at 32-34). In their briefing, Plaintiffs describe the Defendants' fraudulent conduct as:

> ... Austal USA ... [was] ... misrepresenting and suppressing information regarding COVID-19 grant amounts to its employees and the amount of sick individuals in the workplace.

---

23 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

.... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell misrepresented their vaccination status by falsifying their COVID-19 vaccine passport documentation and suppression of such from the workforce, intentionally setting the vaccination deadline date days before employee bonuses were to be paid and alleging that this was due to executive decision-making and beyond the control of the Human Resources team, misrepresenting and suppressing the reasons for universally terminating 100% of Austal USA's and Austal Limited's unvaccinated workforce, and misrepresenting to Plaintiffs regarding the purpose of the creation and implementation of a vaccine mandate for customers and visitors.

These misrepresentations were made through documentation, correspondences, oral statements, and through public announcements to Plaintiffs. Plaintiffs and other Austal employees reasonably relied on these misrepresentations and omissions of important facts to their detriment.

(Doc. 29 at 47).  In response, Austal argues that because the Plaintiffs are litigating the termination of their at-will employment, there can be no fraud claims per <u>Burrell v. Carraway Meth. Hosp of Ala., Inc</u>., 607 So.2d 193, 196 (Ala. 1992) -- though citing a document (Doc. 44) not filed in this case.  (Doc. 30 at 9-10).

A Section 6-5-101 fraudulent misrepresentation claim "requires (1) a false representation (2) of a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation ... *Standard Furniture Mfg. Co. v. Reed*, 572 So. 2d 389, 391 (Ala. 1990)." <u>Avendano v. Shaw</u>, 2022 WL 3572663 (Ala. Aug. 19, 2022).  A claim for deceit "is extremely similar to [a misrepresentation claim], except that 'a[n] action for deceit, under ... § 6-5-103 and § 6-5-104, results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead,' *Whitlow v. Bruno's Inc*., 567 So. 2d 1235, 1241 (Ala. 1990), while an action for misrepresentation of material fact can be based on an unintentional misrepresentation. [§ 6-5-101]." <u>Garber v. Nationwide Mut. Ins. Co</u>., 2021 WL 5811733 (N.D. Ala. Dec. 7, 2021 (citing <u>Montgomery Rubber & Gasket Co. v. Belmont Machinery Co.</u>, 308 F. Supp. 2d 1293, 1299 (M.D. Ala. 2004)). "[T]o sufficiently plead fraudulent deceit, Plaintiff must allege facts to show that he was injured by a willful or reckless misrepresentation of material fact by Defendant .... and that, in making the misrepresentation of a material fact, Defendant ... intended to deceive Plaintiff." <u>Stewart v. Argos Ready Mix, LLC</u>, 2016 WL7238915, *10 (M.D. Ala. Nov. 1, 2016).  And a Section 6-5-102 fraudulent suppression claim provides: "Suppression of a material fact which the party is under an obligation to communicate constitutes

27

fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." To state a viable claim for fraudulent suppression, a plaintiff must allege that: (1) the defendant(s) possessed a duty to disclose an existing material fact; (2) the defendant(s) concealed or suppressed that material fact; (3) the defendant(s) suppression induced plaintiff to act or refrain from acting; and (4) plaintiff suffered actual damage as a proximate result. Garber, 2021 WL 5811733 at *16.

Collectively, for the proposed fraud claims, the existence of a duty and/or proximate damage or harm is required. At the outset, *as alleged*, Plaintiffs' fraud claims are not limited to termination of their at will employment. Plaintiffs' fraud claims concern the actions, conduct, and/or (mis)representations by the named defendants (Austal USA and certain employees of Austal USA) regarding COVID-19 grant amounts, the number of sick individuals at work, vaccine passport information (allegedly falsified), vaccination deadlines tied to bonuses, and misrepresentation of the purpose of the creation/implementation of the vaccine mandate. *However*, Plaintiffs' alleged damage *appears* to be limited to termination of their employment. That is, Plaintiffs allege that they relied on the fraud/misrepresentations to their detriment and that, in being terminated, were "injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses." This suggests futility. Burrell, 607 So.2d at 196 ("the showing of a loss of employment is legally inadequate to show the element of damage in a fraud claim by an at-will employee against his or her employer[]"). And Plaintiffs have not alleged *how* they *detrimentally* relied on representations by these defendants or *how* such reliance resulted in their termination.

Moreover, as to suppression, Plaintiffs assume the existence of a duty to disclose merely because they were employees of Austal USA. However, such a duty does not exist merely via at will employment -- and Plaintiffs have failed to allege any relationship, factors, or other circumstances which would create a duty to disclose. Miller v. SCI Systems, Inc., 479 So.2d 718, 720 (Ala. 1985) (per curiam). See, e.g., Pace v. Alfa Mut. Ins. Co., 178 F.Supp.3d 1201, 1218-1219 (M.D. Ala. 2016) ("[f]actors relevant to determining 'whether the alleged circumstances create a duty of disclosure include, (1) the relationship of the parties; (2) the relative

28

knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.' *Cochran v. Five Points Temporaries, LLC,* 907 F.Supp.2d 1260, 1278 (N.D.Ala.2012) (citations and internal quotations omitted)[]"). Further, an "employer is not the fiduciary of ... [an] employee[]" so the duty to disclose does not exist in that regard. Miller, 479 So.2d at 720.  Due to the insufficient allegations and failure to allege the necessary elements for fraud, facial plausibility is lacking. Thus, Plaintiffs' motion for leave to amend, to assert these fraud claims against Austal USA and the individual defendants, is **DENIED**.

**E.     New Proposed Count XII (Alabama civil conspiracy)[24] against Austal/individuals**

In the proposed amended complaint, Plaintiffs allege civil conspiracy claims against Austal USA, Murdaugh, Rothwell, Gregg, and Bell:

> Austal USA, .... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, Mr. Bell and possibly others, mutually agreed to engage in the creation, implementation, and action of a financially motivated scheme, which was perpetrated by the Vaccine Policy, to better position Defendant in the competitive market, financially benefit themselves even greater at the expense of their employees, and to terminate any dissenting employee, regardless of their fundamental rights.

> ... Defendants receipt of COVID-19 funds on respective dates, followed by significant employment actions and/or vaccine mandate announcements, Defendants' reasons for actively discriminating against Plaintiffs, and other conduct indicates a coordinated plan that is only possible through meticulous planning due to the nature of the events.

> The actions of the named Defendants, as set out herein, violate Alabama state law.

> As a result of the actions of the named Defendants, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(Doc. 29-1 at 35).  Plaintiffs allege that the Defendants were financially motivated to, on behalf of Austal USA, better the company's market position and so to accomplish this, calculated and conspired in a scheme to discriminate against non-vaccinated employees via Austal USA's COVID-19 vaccine policy, to effect their

---

24 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

29

termination.  Essentially, that the Defendants (Austal USA and some of its employees) conspired to discriminate and terminate the Plaintiffs because they were unvaccinated.  (Id.)

In Alabama, the elements of civil conspiracy are 1) a concerted action by two or more persons 2) to achieve an unlawful purpose or a lawful purpose by unlawful means. Ex parte Maintenance Group, Inc., 261 So.3d 337, 347 (Ala. 2017). See also Majdalani, 2022 WL 4596349 at *4 (same).  However, as noted by the Eleventh Circuit in McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc):

> The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. See Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc., 140 F.3d 898, 912 (11th Cir.1998) (explaining that a civil conspiracy ordinarily requires "an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff"). However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 603 (5th Cir.1981); see also United States v. Hartley, 678 F.2d 961, 970 (11th Cir.1982). Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. See Dussouy, 660 F.2d at 603 (noting that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.1952) (explaining that "[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation").

See also Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010) (recognizing the doctrine when analyzing a Section 1983 civil conspiracy claim and stating "[w]e recognize that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a police officer's employment. However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally. The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's

30

business[]"); <u>Stern v. Leath,</u> 2021 WL 2874113, *3 and *8 (M.D. Ala. Jul. 8, 2021) ("the intracorporate conspiracy doctrine applies ... to Count 3 [civil conspiracy claim] brought under Alabama law[]" while noting that exceptions noted in other circuits did not apply including the "series of discriminatory acts" exception because "the Eleventh Circuit has neither accepted nor rejected" it and "[t]here is, thus, no binding authority for the exception in this circuit[]" and "[t]he same holds true under Alabama law as the parties have cited no Alabama Supreme Court decision that has adopted or discussed this exception[]"); <u>Doe v. Univ. of S. Alabama,</u> 2020 WL 759895, *16 (S.D. Ala. Feb. 14, 2020) ("[T]he Court finds that the 'series of discretionary acts' exception [to the doctrine] does not apply in this circuit[]" and concluded that the plaintiff's civil conspiracy claim was barred by the doctrine); <u>Southern v. Pfizer, Inc.</u>, 471 F.Supp.2d 1207, 1220-1221 (N.D. Ala. Jun. 23, 2006) ("[i]t is 'not legally possible' for ... [corporate employees], acting as agents of [a corporation] ... and within the scope of their employment, to conspire with one other or with ... [the corporation][]"); <u>M&F Bank v. First Am. Title Ins. Co.</u>, 144 So.3d 222, 234 (Ala. 2013) ("[t]he trial court entered a summary judgment in favor of M&F on this [corporate civil conspiracy] claim because .....the intracorporate-conspiracy doctrine holds that a corporation may not be held liable for any alleged conspiracy with its own employees or agents ... the .... doctrine provides a sufficient ground for the summary judgment on this counterclaim, and the trial court did not err in this regard[]") (internal citations omitted). <u>See</u> also *Seals v. Leath*, 2019 WL 6997398, at *7 (M.D. Ala. Dec. 18, 2019) ("[T]here is little doubt that the Alabama Supreme Court would apply the intracorporate conspiracy doctrine in the same way the Eleventh Circuit has."); *White v. City of Athens*, 169 F. Supp. 3d 1254, 1269 (N.D. Ala. 2016) ("[T]he Court has little difficulty concluding that, if presented directly with the issue, the Alabama Supreme Court would hold that the intracorporate conspiracy doctrine applies to public entities.").

Thus, Plaintiffs' motion for leave to amend, to assert civil conspiracy in the manner alleged against Austal USA and the individual defendants, is **DENIED** as futile. Grider, 618 F.3d at 1261 ("[A]cts of corporate agents are attributed to the corporation itself ...").

**F.**      **New Proposed Count XIII (Alabama wantonness) against Austal USA/individuals**[25]

Plaintiffs' allegations are rooted in purported discriminatory actions taken by the Defendants regarding the implementation of a mandatory COVID-19 vaccine policy, which resulted in their termination for refusing to be vaccinated.  In the proposed first amended complaint, Plaintiffs allege wantonness against Austal USA, Murdaugh, Rothwell, Gregg, and Bell (Count XIII) due to: their "actions ... carried out with such a reckless or conscious disregard of employee's fundamental rights, employees' health and safety, and without regard for the law[;]" "Defendants knew or should have known that there would be mental, physical, and emotional harm conferred upon its employees for its actions[';]" and "[a]s a result of the actions ... the named Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses."  (Doc. 29-1 at 36).  Essentially then, Plaintiffs allege wanton discrimination.  Plaintiffs explain in briefing that these defendants:

> engaged in alleged conduct that was undertaken with such blatant disregard for the law, lives, careers, fundamental rights, and health and safety of hundreds of its employees'. Hundreds of individuals were terminated while Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell were able to remain employed, received bonuses, and increased salaries ... Austal USA ... received millions in COVID-19 relief and was awarded billions in prime awarded contracts as a result of this termination by remaining eligible for remaining in "perceived compliance" with EO 14042.
>
> Austal USA ... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell knew or were willfully ignorant that undertaking such actions would impose mental, physical, economic, and emotional harm upon hundreds of employees ... these individuals acted with such disregard of these considerations ...

(Doc. 29 at 47-48).  In response, Austal USA argues that federal law (Title VII and the ADA) provides for an employer's duty to accommodate and there is no independent duty under Alabama law to accommodate Plaintiffs, and so the wantonness claim is futile.  (Doc. 27-1 at 12).

"Alabama law provides no common-law tort claim for .... disability discrimination in employment[.]" Hand v. University of Ala. Bd. of Trustees, 304 F.Supp.3d 1173, 1183 (N.D. Ala. 2018). And "[t]he tort

---

[25] Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

underlying a claim of wantonness cannot be based on discrimination[.]" Williams v. Daiichi Sankyo, Inc., 2012 WL 3627765, *4 (N.D. Ala. Aug. 21, 2012).  As summarized in Pruitt v. Charter Comm., 2019 WL 1199837, *9 (N.D. Ala. Mar. 14, 2019):

> For his disability discrimination claim, plaintiff alleges that the Charter defendants failed to engage in an interactive process and denied him reasonable accommodations of his disability ... For his harassment claim, plaintiff does not state any facts, but merely references his previous allegations ... To the extent plaintiff intended to bring any of these claims pursuant to federal statutes, they have already been addressed. To the extent plaintiff intended to assert state law claims for disability discrimination and harassment, those claims are not available under Alabama law. *See Hand v. University of Alabama Board of Trustees*, 304 F. Supp. 3d 1173, 1183 (N.D. Ala. 2018) ("Alabama law provides no common-law tort claim for sex or disability discrimination in employment...."); *Edwards v. Prime, Inc. ....* 2008 WL 9393800, at *11 (N.D. Ala. Dec. 11, 2008) ("Neither discrimination nor harassment constitutes a common law tort.").

See also Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (finding that because Alabama does not recognize a gender discrimination tort claim, plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination). Thus, Plaintiffs' motion for leave to amend the complaint, to add a common law claim for wantonness (wanton discrimination) against Austal USA and the individual defendants, is **DENIED** as futile.

## G.    New Proposed Count XIV (Alabama breach of contract - implied covenant of good faith) against Austal USA)[26]

In the proposed amended complaint, Plaintiffs allege that Austal USA breached an employment contract (implied covenant of good faith) as follows:

> Plaintiffs had an employment contract to perform tasks, responsibilities, and/or duties to ... Austal USA. Additionally, ... Austal USA possessed duties as an employer to its employees, like each and every Plaintiff named in this suit.

> ... Each Plaintiff was in good-standing with .... Austal USA until the implementation of its Vaccine Policy. From that time on, ... Austal USA engaged in scapegoating unvaccinated employees on the basis of their religious beliefs without any regard for the health and safety of those who inhabit .... Austal USA's facilities.

---

26 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

33

... Austal USA facilitated, encouraged, and condoned the implementation of a toxic work environment that specifically targeted Plaintiffs.

(Doc. 29-1 at 37).

This count is rooted in Plaintiffs' mistaken belief that "Plaintiffs had employment contracts with Austal USA[]" "to perform tasks, responsibilities, and/or duties" and that "Alabama law recognizes there is an implied covenant that neither party shall do anything, which shall have the effect of harming the rights of the other party receiving benefits of the contract ... Plaintiffs' fundamental, health and safety, and employment were disproportionally and unfairly affected by the alleged actions" of Austal USA. (Doc. 29 at 48-49). Plaintiffs then argue and allege that the individuals defendants "possessed duties to not engage in unlawful conduct, engage in discriminatory practices, engage in self-interested transactions, and to force out otherwise qualified employees and/or terminate employees on the basis of their protected characteristics[]" and that defendants "all received significant financial compensation and/or engaged in self-interested transactions that only benefitted themselves at the expense of its employees careers. These entities and/or individuals receive benefits in the form of remaining employee, incentives, receiving further COVID-19 relief, awarded lucrative government contracts, bonuses, and/or salary increases after termination. Plaintiffs and other Austal employees experienced harm as a result[.]" (Id. at 49). (Doc. 29-1 at 38-39).

Generally, "[u]nder Alabama law[] an employment relationship is terminable at will by the employer or the employee unless 'there is an express and specific contract for lifetime employment or employment for a specific duration' *Howard v. Wolff Broadcasting Corp.,* 611 So.2d 307, 310 (Ala.1992); *Clark v. America's First Credit Union,* 585 So.2d 1367, 1369 (Ala.1991)." Williamson v. Wal-Mart Assoc., Inc., 2013 WL 1909197, *7 (N.D. Ala. Apr. 16, 2013) ), *Report & Recommendation adopted*, 2013 WL 1909422 (N.D. Ala. May 6, 2013). See also Davis v. City of Montevallo, 2023 WL 180252 (Ala. 2023) ("[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification." *Hoffman-La Roche, Inc. v. Campbell,* 512 So.2d 725, 728 (Ala. 1987)[]"); Miller v. SCI Systems, Inc., 479 So.2d 718, 720 (Ala. 1985) (per curiam) ("FN[1] The plaintiff does not allege breach of contract,

apparently because she was an employee at will. See *e.g.*, *Kitsos v. Mobile Gas Service Corp.,* 431 So.2d 1150 (Ala.1983)[]"); Brewer v. FeightCar Ala., LLC, 2021 WL 1383285, *5 (N.D. Ala. Apr. 13, 2021) "Alabama law does not recognize a claim for breach of an at-will employment contract[]").

The record before the Court indicates that Plaintiffs were at-will employees at Austal USA. No employment contracts have been specifically referenced. And Austal USA asserts that none exist. And no employee handbooks with terms suggesting otherwise have been referenced. On the information before the Court, there can be no breach of contract claim against these defendants for an implied covenant of good faith. This is because there is no Alabama law which recognizes a claim of implied covenant of good faith arising out of an alleged wrongful discharge in the at-will employment context; thus, this claim is futile. See, e.g., Williamson. 2013 WL 1909197, *7 ("the evidence clearly reflects that plaintiff and Wal–Mart were not involved in any type of contractual relationship other than one of at-will employment[]"). "The same is true with regard to the plaintiff's claim of a breach of the covenant of good faith .... Before there can be a breach of a covenant of good faith ...., there must be an employment contract upon which to base this covenant. *See, e.g*., *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725 (Ala.1987) (at-will employment relationship altered by language in employee handbook creating unilateral contract which required covenant of good faith and fair dealing). Because plaintiff was an at-will employee, she did not have an employment contract from which one can infer a covenant of good faith ..... this claim is without merit." Williamson, 2013 WL 1909197 at *8. See also Wyant v. Burlington Northern Santa Fe R.R., 210 F.Supp.2d 1263, 1294-1295 (N.D. Ala. 2002) (internal citations omitted) ("plaintiff next argues ... breach[] an implied covenant of good faith and fair dealing ... This claim is due to be denied for two reasons. First, ... Alabama does not recognize this type of claim outside insurance claims ... Second, there was no contract in this case. ... because no contract of employment existed ... breach of [g]ood faith and fair dealing must fail[]"). "Without a contract, no implied covenant of good faith ... exists." Woodward v. BBT Sec., LLC, 2018 WL 3622925, *5 (N.D. Ala. Jul. 30, 2018). Thus, Plaintiffs' motion to amend the complaint, to assert this claim against Austal USA, is **DENIED** as futile.

**H.      New Proposed Count XV (Alabama duty of loyalty) against Austal USA/individuals)** [27]

In the proposed amended complaint, Plaintiffs allege as follows regarding the duty of loyalty:

Plaintiffs had an employment contract to perform tasks, responsibilities, and/or duties to Defendants' business. Additionally, Austal Limited and Austal USA possessed duties to Plaintiffs as they were Plaintiffs employer.

... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell possessed duties to not engage in unlawful conduct, engage in discriminatory practices, and to force out otherwise qualified employees and/or terminate employees on the basis of their protected characteristics.

... The named Defendants received significant financial compensation and/or engaged in self-interested transactions benefitted themselves and harm its employees in the form of incentives, bonuses, and salary increases after termination.

... Plaintiffs and others experienced harm as a result of the named Defendants' actions.
                                                    ***
... As a result of the actions of the named Defendants, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(Doc. 29-1 at 37-38). In sum Plaintiffs allege that Austal USA and the individuals breached their duty of loyalty because they had an employment contract and discriminated against them in violation of that duty.

Incorrect assumptions underlie Plaintiffs' duty of loyalty claim.  In Alabama, the duty of loyalty is a breach of fiduciary duty claim. See, e.g., Pruitt,  2019 WL 1199837 at *11 (to plead a viable claim for breach of a duty of loyalty/fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach). Typically, this claim concerns intracorporate matters/disputes and/or arises via a principal-agent relationship whereby a fiduciary status imposes said duty (e.g., shareholder disputes, disputes among corporate officers, etc.). See, e.g., Gardner v. Cumis Ins. Soc., Inc., 582 So.2d 1094, 1096 (Ala. 1991) ("[t]he principal-agent relationship is fiduciary by nature and imposes a duty of loyalty, good faith, and fair dealing on the part of the agent[]"); Jones v. Ellis, 551 So.2d 396, 401 (Ala. 1989) ("[i]n addition to owing the corporation and its shareholders a duty of care, a director also occupies a position of special trust

---

[27] Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

36

in regard to the corporation and its shareholders, which imposes upon him a duty of loyalty[]"). "The corporate fiduciary duty is divided into two parts: (1) a duty of care; and (2) a duty of loyalty ... The duty of loyalty ... prohibits faithlessness and self-dealing by corporate officers. *See Massey*, 601 So. 2d at 456. *See also, e.g., Alagold Corporation v. Freeman*, 20 F. Supp. 2d 1305, 1310 (M.D. Ala. 1998) (duty of loyalty 'encompasses a duty to disclose information to those who have a right to know the facts'); *Belcher v. Birmingham Trust National Bank*, 348 F. Supp. 61, 82 (N.D. Ala. 1968) (the duty of loyalty of 'officers and directors are analogous to those of trustees. They are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation[]')." QORE Prop. Sciences, Inc. v. Civil Solutions, Inc., 2006 WL 8437067, *22 (N.D. Ala. Mar. 2, 2006). However, "a principal or employer is not the fiduciary of the agent or employee." Miller, 479 So. 2d at 720. Put simply, there is no cause of action in Alabama for an employer's breach of a duty to loyalty to an at will employee -- no such duty exists. See, e.g., Catherine Fisk & Adam Barry, *Contingent Loyalty and Restricted Exit: Commentary on the Restatement of Employment Law*, 16 EMP. RTS. & EMP. POL'Y J. 413, 419 (2012) ("The employer owes no duty of loyalty to the employee and is free to pursue its self-interest by firing him[]"*)*.

    As alleged, Plaintiffs' duty of loyalty claim is rooted in the mistaken belief that they had employment contracts with Austal USA <u>and</u> that simply because Austal USA was their employer, a duty of loyalty *towards them* existed. However, based on the information before the Court, Plaintiffs were at-will employees of Austal USA and there are no such contracts -- which as noted *supra* suggests futility. Additionally, the duty of loyalty is rooted in the need for individuals to act in the interests of the entity. For instance, "[a] managerial employee, before leaving his employment, may not secretly solicit his employer's customers on behalf of a competing venture. *See Allied*, 585 So. 2d at 37 ('Implicit in this duty [of loyalty] is an obligation not to subvert the principal's business by luring away customers[]')." QORE Prop. Sciences, 2006 WL 8437067 at *26. That is not what is alleged here. Moreover, an employer is not the fiduciary of its employee (*i.e.*, no such duty exists). Miller, 479 So.2d at 720. Further, Plaintiffs' duty of loyalty claim focuses on alleged discrimination. Plaintiffs'

discrimination claims are already set forth in the federal claims and there is nothing before the Court indicating

that discrimination allegations support an Alabama common law duty of loyalty claim and/or in an at-will

employment situation.  Based on the foregoing, the claim lacks facial plausibility.  See, e.g., Pruitt, 2019 WL

1199837 at *11 (dismissing a breach of fiduciary duty claim alleged by an employee against an employer,

rooted in a duty of loyalty assertion, because an employer is not the fiduciary of an employee). As such,

Plaintiffs' motion to amend the complaint, to assert a duty of loyalty claim against Austal USA and the

individual defendants, is **DENIED** as futile.

I.   **New Proposed Counts XVI-XVII (Alabama unjust enrichment/disgorgement) against Austal USA/individuals)**[28]

In the proposed amended complaint Plaintiffs allege the defendants have been unjustly enriched and

should forfeit profits accrued due to their purported unlawful conduct (disgorgement) as follows:

> ... [these defendants] ... obtained significant benefits in the form of financial compensation, continued job opportunities, and lucrative Government funding opportunities that were obtained through business activities at the detriment of Plaintiffs and others situated.
>
> ... this retention of an immense financial benefit goes against the fundamental principles of justice, equity, and good conscience.
>
> ...The named Defendants' retention of these benefits is unjust because Plaintiffs and others were acting in reliance on the named Defendants' assertions against Plaintiffs fundamental rights and received the benefit of such conduct at the detriment of Plaintiffs.
>
> ... The named Defendants were the recipient of such benefits at the expense of others.
>
> ... The actions of the named Defendants, as set out herein, violate Alabama law.
>
> ***
>
> Austal USA ... Mr. Murdaugh, John Rothwell, Mr. Gregg, and Mr. Bell were wrongfully benefitted from intentional or reckless acts undertaken to individually profit from the termination of 100% of its unvaccinated workforce among employees at Austal.
>
> ... Plaintiffs request that all named Defendants forfeit any profits incurred as a result of Defendants' unlawful conduct.

---

28 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

> ... It is inequitable as a matter of law to allow the named Defendants to not be held accountable for their disregard for the law from which they immensely profited from at the expense of hundreds of employees, including the named Plaintiffs.

(Doc. 29-1 at 38-39).

At the outset, unjust enrichment and disgorgement are equitable remedies available only when there is no adequate remedy at law (such as a contract).  Concerning unjust enrichment, it is "quasi-contractual....*White* [*v. Microsoft Corp.*], 454 F.Supp.2d [1118] at 1133 n. 24 [ (S.D.Ala.2006) ] (unjust enrichment is a legal fiction used to create an implied contract)[ ]....' Shedd v. Wells Fargo Home Mortg., Inc., 2014 WL 6451245, *6 and note 4 (S.D. Ala. Nov. 17, 2014)." Univalor Trust, SA v. Columbia Petroleum, LLC, 315 F.R.D. 374, 381 (S.D. Ala. Jun. 21, 2016); Mantiply v. Mantiply, 951 So.2d 638, 654 (Ala. 2006). Specifically "[t]he doctrine of unjust enrichment...permit[s] the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Flying J Fish Farm v. Peoples Bank of Greensboro, 12 So.3d 1185, 1193 (Ala.2008) (citations omitted).

Upon review of Plaintiffs' unjust enrichment allegations, they are insufficient as plead.  There are no identifiable criteria from which Plaintiffs can assert that the defendants have been unjustly enriched at their expense. The allegations do not support a finding that Plaintiffs conferred a benefit on the Defendants that would be unjust for them to retain.  And, as alleged, this claim appears to instead simply be a restating of Plaintiffs' federal discrimination claims insofar as they allege that the Defendants terminated them due to their non-vaccination status (Plaintiffs' "expense" = termination). At most, Plaintiffs allege "financial compensation, continued job opportunities, and lucrative Government funding opportunities" (Doc. 29-1 at 38) the Defendants received, but without alleging how such, in equity and good conscience, belongs to the Plaintiffs instead -- or that such was improperly paid to the Defendants because of mistake or fraud. Flying J Fish Farm, 12 So.3d at 1193 ("To succeed on a claim of unjust enrichment, the plaintiff must show that ... the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud[]").  And "[i]n the absence of mistake or misreliance

by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not to have

been unjustly enriched." Mantiply, 951 So.2d at 655 (internal citations and emphasis omitted).

As for disgorgement, this is "an equitable remedy intended to prevent unjust enrichment." S.E.C. v.

Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014). See also e.g., Northern Assurance Co. of Am. v. Bayside

Marine Const., Inc., 2009 WL 151023, *4 (S.D. Ala. Jan 21, 2009); S.E.C. v. Huffman, 996 F.2d 800, 802 (5th

Cir.1993) (providing that "[d]isgorgement wrests ill-gotten gains from the hands of a wrongdoer []"). The

remedy may not be used punitively, and thus a causal connection must exist between the breach and the benefit

sought to be disgorged. S.E.C. v. Blatt, 583 F.2d 1325, 1335 (5th Cir.1978) ("[d]isgorgement is remedial and

not punitive. The court's power to order disgorgement extends only to the amount [] by which the defendant

profited from his wrongdoing[]"). The concept underlying disgorgement is that another received monies that

should have been paid to Plaintiffs. Plaintiffs' allegations do not sufficiently identify discernible "monies" (or

wrested ill-gotten gains) that should have been paid to Plaintiffs but were retained by the defendants. Only that

Plaintiffs allege wrongful discrimination which resulted in termination. And to the extent these claims are for

lost wages and benefits: "[a] close look at the restitution concept ...  demonstrates that it does not apply to this

suit for lost wages and benefits. The substantive basis of restitution is unjust enrichment, a benefit conferred

on a party which it is unjust for that party to retain ... The 'benefit' conferred on defendant by its discharge of

plaintiff, if any, lies in any savings it realizes from hiring another person in plaintiff's place. This 'benefit' is

not measured by the cost of plaintiff's lost wages and benefits. Thus the damages sought by plaintiff are not

the disgorgement of improper profits or some other form of unjust enrichment; plaintiff's cause of action is

properly viewed as a claim for compensatory damages measured by the amount of his lost wages and

benefits...[]"). Mitchell v. Consolidated Freightways Corp. of Del., 747 F.Supp. 1446, 1451 note 4 (M.D. Fla.

1990) (internal citations omitted).

As such, Plaintiffs' motion for leave to amend the complaint, as to unjust enrichment and disgorgement

against Austal USA and the individual defendants, is **DENIED** as futile.

**J.**     **New Proposed Count XVIII (Alabama officer/director liability)**[29]

In the proposed amended complaint Plaintiffs allege: "Austal USA ... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell encouraged, condoned, and authorized the conduct undertaken by Austal and its employees. Given the amount of funds obtained due to the alleged unlawful conduct and the severity of the alleged harm that affected only Plaintiffs on the basis of their protected characteristics, Austal's officers and/or directors should be found personally liable in the interests of justice." (Doc. 29 at 50; Doc. 29-1 at 39-40). In briefing, Plaintiffs argue that this "verbatim delineat[es] that the magnitude of COVID-19 funds that were allegedly received and through Defendant(s) conduct to achieve these funds, suppress the knowledge of these funds and vaccine percentages, alleged unlawful conduct discriminating against the fundamental rights of its employees, and more." (Doc. 29 at 50). "This would include but is certainly not limited to Austal USA ... Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell encouraging, condoning, and authorizing jokes, harassing statements, threats, misrepresentations, at the expense of Plaintiffs and other unvaccinated employees ... in regard with Mr. Murdaugh, Mr. Rothwell, Mr. Gregg, and Mr. Bell allegedly engaging in actions to misrepresent their vaccination status to Plaintiffs, Austal, to other employees, and the state and federal governments. All of whom relied on these individuals statements regarding their vaccine status along with representations of what the accommodation process was to entail and how the procedures would be handled." (Id.) In response, Austal USA argues that, *as alleged*, this is a repleading of Plaintiffs' Title VII and/or ADAA discrimination claims based on their unvaccinated status.

Upon consideration, the proposed count is a repleading of, or addition to, Plaintiffs' federal discrimination claims against Austal USA. As such, these allegations are already encompassed within Plaintiffs' federal claims. And as to the individuals, Plaintiffs' claim fails as a matter of law because:

> [i]ndividual defendants are not amenable to private suit and personal liability for employment discrimination under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; ....

---

29 Plaintiffs sought to allege this count also against Austal, Ltd., but as noted *supra*, it is not a proper defendant.

41

> See *Albra v. Advan, Inc.*, 490 F.3d 826, 829–30 (11th Cir. 2007); *see also Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (relief under Title VII is available against only the employer and not against individual employees regardless of whether the employer is a public entity or a private company); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003) (individual liability precluded for violation of ADA anti-discrimination provision in employment); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (ADA does not provide for individual liability, only for employer liability); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (individual defendants could not be held liable in their individual capacities under the ADEA or Title VII); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (individual capacity suits under Title VII are inappropriate; relief is to be found from the employer). Plaintiff's claims .... seek to impose individual liability and such relief is not available under these statutes. Relief, if any, is against the employer, not an individual. The claims .... individually are properly dismissed, as a matter of law.

Baptiste-Alkebul-Lan v. Smith, 2022 WL 175551745, *7 (M.D. Fla. Dec. 9, 2022).  Thus, Plaintiffs' motion to amend, to allege an officer/director liability claim, is **DENIED** as futile.

## V.    Conclusion

It is **ORDERED** that the motion for leave to file a First Amended Complaint is **GRANTED in part** and **DENIED in part,** as set forth *supra* and on the condition that Plaintiffs file a **new** First Amended Complaint by **April 24, 2023 strictly** in keeping with this Order; and to avoid any confusion Plaintiffs' proposed and alternative proposed first amended complaints (Docs. 25-1 and Doc. 29-1) are **STRICKEN.**

**DONE** and **ORDERED** this the **10th** day of **April 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**