# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PAUL DAVID BAUGH, JR.,** *et al.,* | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| vs. | * CIVIL ACTION NO. 22-00329-KD-C |
| | * |
| **AUSTAL USA, LLC,** | * |
| | * |
| **Defendant.** | * |

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant Austal USA, LLC's motion to dismiss Counts III through VI of Plaintiffs' first amended complaint (Doc. 50). The motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant's motion be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On July 14, 2022, Plaintiffs Paul David Baugh, Jr. ("Baugh"), David Dudley ("Dudley"), Carl Skipper ("Skipper"), James Vela ("Vela"), and James Anthony Woods ("Woods") commenced this action by filing a two-count complaint against Defendant Austal USA, LLC ("Austal") in the Southern District of Mississippi. (Doc. 1). Plaintiffs' complaint asserted claims against Austal for "Religious Discrimination By Defendant's Failure to Provide Accommodations" in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (Count I), and "Negligence and/or Gross Negligence" (Count II). (*Id*.). On August 22, 2022, this case was transferred to the Southern District of Alabama. (Doc. 9). On September 6, 2022, Austal filed an answer to Plaintiffs' complaint. (Doc. 19).

On November 1, 2022, Plaintiffs filed a motion for leave to amend and a proposed amended complaint seeking to add numerous claims and additional defendants (Docs. 25, 25-1), which they later amended by filing an "alternative" proposed first amended complaint. (Doc. 29-1). On April 10, 2023, the Court granted Plaintiffs' motion for leave to amend only to the extent it sought to add new Title VII claims against Austal for disparate treatment religious discrimination, hostile work environment, and harassment on religious grounds, and an invasion of privacy claim under Alabama state law. (Doc. 48).

On April 24, 2023, Plaintiffs filed their operative first amended complaint, which asserts six causes of action against Austal.[1] (Doc. 49). Notably, in the first amended complaint, Plaintiffs bring the following claims against Austal under Title VII:

> **Count I**
> **Violation of Title VII . . .**
> **Failure to Accommodate - Religious Discrimination . . .**
>
> . . . Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

---

[1] Although the invasion of privacy claim in Plaintiffs' proposed first amended complaint was directed against Austal, Austal's parent company, and four individuals, the operative first amended complaint names Austal as the sole Defendant. (See Docs. 29-1, 49).

In good faith, . . . Plaintiffs informed Austal USA of those beliefs and requested religious exemptions and accommodations from Austal Limited's and Austal USA's vaccine mandate. . . . Plaintiffs undertook all requisite and applicable procedures to engage in the accommodation process with Defendant.

Austal USA has failed to engage in the interactive process with . . . Plaintiffs regarding their religious accommodation requests.

Irrespective of the interactive process, Austal USA failed to provide . . . Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against . . . Plaintiffs because of their religious beliefs.

Through Austal USA's actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal USA intentionally or recklessly deprived . . . Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

As a result of the actions of Austal USA, . . . Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

*** 

**Count III**
**Violation of Title VII . . .**
**Disparate Treatment - Religious Discrimination . . .**

. . . Plaintiffs have been discriminated against by Austal USA because of their religious beliefs in the terms of wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment.

Austal USA has engaged in and continues to engage in a pattern and practice of discriminating against its employees on the basis of religion, with respect to wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment. This pattern and practice are uniformly implemented among Austal Limited and Austal USA facilities across the U.S. and globe.

The selection procedures of Austal USA have and continue to have a disparate impact on employees who possess sincerely held religious beliefs, including . . . Plaintiffs.

Jobs which could potentially result in promotions for . . . Plaintiffs are not posted and instead given to individuals who do not express their sincerely held religious beliefs against the vaccine mandate.

Employees who express their religious beliefs were denied positions, stripped of responsibilities, and were subject to disciplinary actions at disproportionate rates than individuals who did not express such religious beliefs. Austal USA's policies are only targeted at . . . Plaintiffs and like-situated persons of religious beliefs.

Austal USA's hiring practices and promotion process delineate a preference to only hire individuals that do not express such religious beliefs.

In the absence of such religious discrimination, . . . Plaintiffs would have a greater opportunity of both supervising and being supervised by persons of their same religious beliefs, having persons of their same religious beliefs integrated into the decision-making process as it related to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, condition, and privileges of employment. By having members of their own religious beliefs, Plaintiffs and similarly situated employees' conditions in all of the foregoing respects would have been significantly improved and they would have been less likely to have been subjected to religious bias in such decisions to the same degree that they have been.

But-for . . . Plaintiffs' religious beliefs, Austal USA would not have engaged in such conduct that had a disparaging effect upon . . . Plaintiffs and only individuals similarly situated to . . . Plaintiffs.

Austal USA failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the religious discrimination of . . . Plaintiffs.

Through Austal USA actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal USA intentionally or recklessly deprived . . . Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

As a result of the actions of Austal USA, . . . Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

**Count IV**
**Violation of Title VII . . .**
**Creation of a Hostile Work Environment . . .**

. . . Plaintiffs suffered mistreatment based on their protected characteristic as Christians. Defendant's conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment, which subsequently created a work environment riddled with abuse.

In good faith, . . . Plaintiffs undertook all requisite and applicable procedures to inform Austal USA of the harassment and toxicity that was pervasive around the workplace.

. . . Plaintiffs' subjugation to such conduct that was motivated on religious grounds has been authorized, ratified, encouraged, and condoned by Austal USA.

Austal USA is responsible for the creation of a hostile work environment under a theory of vicarious liability or direct liability. Austal USA directly engaged in the consistent harassment and directly contributed to the creation of a hostile work environment.

Austal USA, its supervisors, managers, and/or human resources department did not take any steps to assist in the alleviation of this harassing behavior and were in fact one of the primary sources of the harassing behavior.

Austal USA failed to take any prompt and effective action reasonably calculated to result in the prevention and remedy of the religious harassment, religious discrimination, and/or creation of a hostile work environment of . . . Plaintiffs.

Through Austal USA's actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal USA intentionally or recklessly deprived . . . Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

The actions of Austal USA, as set out herein, violate Title VII.

As a result of the actions of Austal USA, . . . Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

**Count V**
**Violation of Title VII . . .**
**Harassment on Religious Grounds . . .**

Austal USA's conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment.

In good faith, . . . Plaintiffs undertook a myriad of requisite and applicable procedures to inform Austal USA of the harassment and the culture of toxicity pertaining to religion.

Austal USA is responsible for such harassment under a theory of vicarious liability or direct liability.

Accordingly, Austal USA had actual knowledge of the actions of its managers and supervisors based on its involvement or conversely had constructive knowledge of such conduct based on the internal organizational policies advanced by Austal USA.

Austal USA failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the religious harassment and discrimination of . . . Plaintiffs and were in fact one of the primary sources of the harassing conduct.

Through Austal USA's actions, policies, employment practices, and conduct directed at . . . Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal USA intentionally or recklessly deprived . . . Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

The actions of Austal USA, as set out herein, violate Title VII.

As a result of the actions of the Austal USA, . . . Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(*Id.* at 34-41).

On April 28, 2023, Austal filed the instant motion to dismiss Plaintiffs' Title VII claims for disparate treatment religious discrimination (Count III), hostile work environment (Count IV), and harassment on religious grounds (Count V), and Plaintiffs' invasion of privacy claim under Alabama state law (Count VI). (Doc. 50). Plaintiffs timely filed a response in opposition to the motion to dismiss (Doc. 53), and Austal filed a timely reply. (Doc. 56). Thus, Austal's motion is ripe for resolution.

## II.     STANDARDS OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This necessarily requires that a plaintiff include factual allegations for each essential element of her claim. *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). That said,

"[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

A court reviewing a motion to dismiss must typically limit its consideration to the complaint and exhibits attached thereto. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam). "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009).

## III.   **DISCUSSION**

Austal contends that Plaintiffs' recently added Title VII claims for disparate treatment religious discrimination (Count III), hostile work environment (Count IV), and harassment on religious grounds (Count V) should be dismissed because Plaintiffs failed to exhaust their administrative remedies with respect to those claims. (Doc. 50 at 7). Specifically, Austal asserts that Plaintiffs did not timely file charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") regarding the Title VII claims added in their first amended complaint, and that these claims could not reasonably have been expected to grow out of the EEOC charges that Plaintiffs filed. (*Id.* at 8-13). Austal further argues that Plaintiffs' Title VII claims in Counts III through V are time-barred because Plaintiffs did not raise them within ninety days of receiving their right-to-sue notices from the EEOC. (*Id.* at 13-14). Austal also contends that Plaintiffs' Alabama state law invasion of privacy claim should be dismissed because the first amended complaint fails to allege sufficient facts to state a plausible claim for relief. (*Id.* at 14-17).

Plaintiffs counter that their Title VII claims for disparate treatment religious discrimination, hostile work environment, and religious harassment should not be dismissed because they reasonably grow out of their charges of discrimination, which allowed the EEOC a reasonable opportunity to fully investigate all of Plaintiffs' claims of discrimination. (Doc. 53 at 5-18). Plaintiffs argue that their Title VII claims are not time-barred because they satisfied their obligation to file suit within ninety days of receipt of their right-to-sue notices. (*Id.* at 18-20). Plaintiffs further contend that their state law invasion of privacy claim should not be dismissed because they alleged sufficient facts to state a plausible claim for relief. (*Id.* at 21-30).

A.   **Plaintiffs' Title VII Claims In Counts III Through V Of The First Amended Complaint Should Be Dismissed Because Plaintiffs Did Not Exhaust Their Administrative Remedies As To Those Claims.**

As noted *supra*, Austal asserts that Plaintiffs' Title VII claims for disparate treatment religious discrimination (Count III), hostile work environment (Count IV) and harassment on religious grounds (Count V) could not reasonably have been expected to grow out of Plaintiffs' EEOC charges and are therefore beyond the allowable scope of Plaintiffs' judicial complaint. (Doc. 50 at 11-13). Thus, Austal contends that these claims are due to be dismissed because Plaintiffs failed to exhaust their administrative remedies as to these claims. (*Id.* at 13). According to Austal:

> Plaintiffs have not administratively exhausted any claim other than their respective claims for Title VII religious failure to accommodate. . . . Plaintiffs failed to raise any allegations whatsoever of either disparate treatment religious discrimination or of a religiously hostile work environment within their respective EEOC Charges. They did not include any hint, mention, or suggestion at all of any concern, issue, or complaint they had about religious-based discrimination as to

"wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment," . . . or that they worked in a religiously hostile workplace "riddled with abuse" and wherein "harassment and toxicity that was pervasive around the workplace." . . . Indeed, the *only* actions by Austal constituting alleged discrimination identified in Plaintiffs' Charges were the alleged failure to accommodate and Plaintiffs' terminations. . . .

To the contrary, the Plaintiffs' Charges read *solely and explicitly* in relation to each's respective allegation that he had been denied a religious accommodation/exemption in violation of Title VII and were subsequently terminated as a result thereof. . . . There is no statement or implication within the Charge even remotely suggesting that Plaintiffs were in any way complaining of any type of religious-based disparate treatment (*i.e.*, that, as Christians, they were being treated differently from non-Christians with respect to the terms and conditions of their employment) or of any type of religious-based harassment. . . .

Moreover, the Title VII claims at issue here could not reasonably be expected to "grow out of" the scope of the EEOC's investigation of Plaintiffs' respective Charges which were based *strictly* on Austal's alleged Title VII failure to accommodate their religious accommodation/exemption requests. . . . Indeed, "the scope of the EEOC investigation that can reasonably be expected to grow out of the facts contained in the [P]laintiffs' [respective] [C]harges is confined to one **type of** discrimination: [failure to accommodate] ("the how") **on the basis of** [religion] ("the why.") . . . . "Because the [P]laintiffs' EEOC [C]harges presented such a narrow issue, they have not exhausted Title VII claims alleging a broader pattern of workplace discrimination - by [Austal] on the basis of [religion] - and thus, they cannot now expand" the theory of "the how" to include allegations of disparate pay discrimination as to wages/compensation, promotions, job assignments, discipline, discharge, or any other terms and conditions of their employment), or of harassment. . . .

The Title VII religious disparate treatment and harassment claims that Plaintiffs now include in their First Amended Complaint do not, in any way, "grow out of" the Title VII religious failure to accommodate claim in their respective Charges. . . . Instead, they have simply raised new and novel theories of discrimination *for the first time* in the First Amended Complaint, which is prohibited by Title VII and its jurisprudence.

(Id. at 9-12 (emphasis in original)).

In response, Plaintiffs argue that each of their Title VII claims "substantially relate to one another and 'grow out' of" their charges of discrimination, and that their new Title VII claims "are 'virtually indistinguishable' with Plaintiffs' existing claims for Failure to Accommodate (Count I) due to their relatedness of the kind of discrimination alleged, and are expressly derived from Plaintiffs' descriptions within their Charges of Discrimination." (Doc. 53 at 7). Plaintiffs posit that the "underlying predicate actions all occurred under the 'umbrella' of Austal USA's COVID-19 Vaccination Mandate[,]" and that their "recently included claims for relief under Title VII are expressly derived from Defendant's conduct to *create, implement, enact, administer, and enforce*" the mandate, which was "depicted within each Plaintiffs' Charges of Discrimination." (Id. at 8 (emphasis in original)). Per Plaintiffs:

> . . . Defendant's COVID-19 Vaccination Mandate . . . was the principal subject of discrimination identified by Plaintiffs in their Charges of Discrimination, and served as the primary basis for discrimination as alleged by Plaintiffs existing Failure to Accommodate (Count I) claims within their Original and First Amended Complaint. . . . Defendant "having failed to accommodate their religious exemption request" is but one (1) predicate discriminatory allegation that was indicated in Plaintiffs' Charges of Discrimination and such inherent action resides within the larger dispositive policy that necessitated exemption requests and accommodation determinations – Austal USA's COVID-19 Vaccination Policy, which supports Plaintiffs' . . . contentions . . . concerning the "natural considerations" of facts that would have logically been ascertained through the EEOC's investigation.
>
> . . . Plaintiffs contend that because the Court and Defendant had previously recognized the validity of Plaintiffs' Failure to Accommodate (Count I) claims that were expressly derived from this exact conduct referenced by Plaintiffs in their Charges of Discrimination, then it is logical to determine Plaintiffs' additional Title VII claims for religious discrimination "grow out" of Plaintiffs' Charges of Discrimination and/or

are virtually indistinguishable. This is because Plaintiffs' additional Title VII claims all directly stem from Defendant's *creation* of its COVID-19 Vaccination Mandate and the underlying predicate actions taken by Defendant to *implement, administer, and enforce* the policy are the predicate of the same transactions, occurrences, and conduct, which has served as the basis for Plaintiffs Failure to Accommodate (Count I) claims.

. . . Plaintiffs' additional Title VII claims "reasonably grow" from their Charges of Discrimination because Plaintiffs' identification and description of Austal USA's discriminatory COVID-19 Vaccination Mandate and conduct taken by Austal USA in furtherance of the mandate was sufficient to establish Plaintiffs' claims for religious discrimination due to the natural considerations involved in the EEOC administrative investigatory process. Each description of alleged discrimination identified the principal vehicle of discrimination, the COVID-19 Vaccination Mandate, and its predicate actions in furtherance of the mandate, such as the administration of the mandate through evaluation of Plaintiffs' religious exemptions and feasibility of accommodation, conduct undertaken to enforce compliance of the mandate, and the consequences of non-compliance (i.e., an employee's termination). Within each of these larger aspects of policies, procedures, and tangible employment actions by Austal USA, contained uniquely discrete factual circumstances of discrimination, which occurred on a microcosmic scale to each Plaintiff. These actuals were done in conjunction with the widely encompassing policies, procedures, and tangible employment actions by Austal USA all of the employees of the company as a whole. These microcosmic discrete instances of discrimination would naturally become apparent to the EEOC through its investigation of the primary mechanisms of discrimination that were referenced in each Plaintiffs' Charges of Discrimination. . . . As a result of Plaintiffs' sufficient depiction of such primary mechanisms of discrimination, the EEOC was able to conduct an appropriate, timely, wholistic, and reasonable assessment of the factual circumstances that would surface to the forefront of the EEOC's administrative investigation and serve as the basis for their determination. Therefore, Plaintiffs' additional claims of religious discrimination "reasonably grow out of" Plaintiffs' Charges of Discrimination due to the sufficiency of their descriptions of the major mechanisms of discrimination, which allowed the EEOC to "have the first opportunity to investigate the alleged discriminatory practices." . . . Plaintiffs' Charges sufficiently provided allegations of discrimination that allowed the EEOC to successfully investigate the factual circumstances led to Austal USA's decision to create, implement, administer, and enforce its COVID-19

Vaccination Mandate, which included Austal USA's decisions to enforce compliance, reject exemption requests, refuse accommodation requests, and terminate employees on the basis of the mandate. . . .

\*\*\*

Plaintiffs did not specifically articulate each discrete act of alleged discrimination against them in their respective Charges of Discrimination, nor were they required to do so, since an employee asserting discrimination in an EEOC charge of discrimination does not need to specific list each and every discrete act complained of. Instead, Plaintiffs "may include in [their] lawsuit a claim for injury resulting from any practice which was or should have been included in a reasonable investigation of the administrative complaint." . . . As such, even though Plaintiffs did not dictate each and every alleged discriminatory act within a small, afforded text box within their Charge of Discrimination, Plaintiffs' felt the delineation of the primary mechanisms of alleged religious discrimination was sufficient for the EEOC to develop a full, fair, and reasonable opportunity to develop a factual record through reasonable investigation into the COVID-19 Vaccination Mandate. Additionally, Plaintiffs felt the present description of discrimination within their Charges of Discrimination allowed the EEOC to investigate the allegations concerning the circumstances surrounding the policy itself, Austal USA's procedures regarding the policy, and the accompanying conduct taken
against Plaintiffs such as, denial of their religious exemption requests, denial of accommodations, and termination. . . .

. . . Plaintiffs' religious discrimination claims under Title VII, which are virtually indistinguishable and/or included within Plaintiffs' existing claim of Failure to Accommodate (Count I), were timely provided to the EEOC, are not "new claims", are implicit and explicit within their Charges of Discrimination, and allowed the EEOC a full, fair, and reasonable opportunity to investigate Plaintiffs' claims. Therefore, these claims should not be dismissed.

(*Id.* at 9-12, 17-18).

"Title VII prohibits employers from discriminating against their employees on the basis of religion." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021) (per curiam) (citing 42 U.S.C. § 2000e-2(a)(1)). "The term 'religion'

in Title VII's prohibition against religious discrimination 'includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observa[nce] or practice without undue hardship on the conduct of the employer's business.'" *Id.* at 1275 (quoting 42 U.S.C. § 2000e(j)). Thus, Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy,* 143 S. Ct. 2279, 2286 (2023) (quoting 42 U.S.C. § 2000e(j)).

"A plaintiff can bring a Title VII religious discrimination claim based on disparate treatment and/or a failure to accommodate [his] religious beliefs." *Lindsey v. Bridge Rehab, Inc.,* 369 F. Supp. 3d 1204, 1210 (N.D. Ala. 2019). "A plaintiff may also bring a Title VII religious discrimination claim based on a discriminatorily hostile work environment." *Harris v. Acosta*, 2018 U.S. Dist. LEXIS 237415, at *14-15, 2018 WL 7080617, at *5 (N.D. Ga. Jan. 9, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 238876, 2018 WL 7082541 (N.D. Ga. Feb. 5, 2018); *see, e.g., Jones v. United Space All., L.L.C.,* 170 F. App'x 52, 55 (11th Cir. 2006) (per curiam). To establish a claim of a hostile work environment based on religious harassment, an employee must prove "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293,

295 (11th Cir. 2012) (per curiam) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC "within" 180 days "after the alleged unlawful employment practice occurred[,]" and by filing a civil action within ninety days after receipt of a right-to-sue notice from the EEOC. *Abbott v. Austal USA, LLC,* 2023 U.S. Dist. LEXIS 99009, at *37, 2023 WL 3868571, at *13 (S.D. Ala. June 7, 2023) (DuBose, J.) (citing 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1)). The purpose of this exhaustion requirement is to afford the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983).

"In light of the purpose of the EEOC exhaustion requirement, . . . a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory v. Ga. Dep't of Hum. Res.,* 355 F.3d 1277, 1280 (11th Cir. 2004) (per curiam) (citations omitted).  Thus, in determining whether a plaintiff has exhausted his administrative remedies, "the 'proper inquiry' is whether the 'plaintiff's complaint is like or related to, or grew out of, the allegations contained in the EEOC charge.'" *Batson v. Salvation Army,* 897 F.3d 1320, 1328 (11th Cir. 2018) (citation and alterations omitted).  "While a plaintiff is not permitted to allege new acts of discrimination in a complaint that were not raised in his EEOC Charge, the scope of an EEOC Charge 'should not be

strictly interpreted' and any claim that 'can reasonably be expected to grow out of the charge of discrimination' is allowed, including claims that 'amplify, clarify, or more clearly focus the allegations in the EEOC charge.'" *Abbott*, 2023 U.S. Dist. LEXIS 99009, at *37, 2023 WL 3868571, at *13 (quoting *Gregory*, 355 F.3d at 1280).

"Generally, a Title VII failure to accommodate claim is distinct from other types of Title VII discrimination[.]" *Id.*, 2023 U.S. Dist. LEXIS 99009, at *38, 2023 WL 3868571, at *14; *see, e.g., Tillery v. ATSI, Inc.,* 2003 U.S. Dist. LEXIS 7119, at *20, 2003 WL 25699080, at *6 (N.D. Ala. Apr. 14, 2003) ("An employer may discriminate on the basis of religion in at least three ways: by subjecting an employee who practices the doctrines of an unfavored religious faith to disparate treatment; by failing to accommodate particular religious practices or requirements; or by harassing the employee."), *aff'd*, 97 F. App'x 906 (11th Cir. 2004) (per curiam); *Bailey*, 992 F.3d at 1272-77 (separately addressing claims of disparate treatment based on religion under two distinct theories: "a traditional disparate-treatment claim" based on plaintiff's assertions that he was treated "worse than non-Rastafarians because he was a Rastafarian[,]" and "a failure-to-reasonably-accommodate disparate-treatment claim" based on employer's "alleged failure to provide [plaintiff] with a reasonable accommodation of his religious practice of wearing a beard"); *Jean-Pierre v. Naples Cmty. Hosp., Inc.,* 817 F. App'x 822, 828 (11th Cir. 2020) (per curiam) (acknowledging that an employee asserting a claim relating to religious beliefs or practices "may plead two separate claims for discrimination—one based on his employer's failure to accommodate and another based on other grounds," but to do so successfully, the

employee must allege a distinct factual basis for each claim); *Jean Pierre v. Park Hotels & Resort, Inc.,* 2017 U.S. Dist. LEXIS 164515, at *6, 2017 WL 4408972, at *2 (S.D. Fla. Oct. 4, 2017) (dismissing plaintiff's hostile work environment claim for failure to exhaust administrative remedies because "her charge of discrimination [was] wholly silent as to any alleged harassment based on her religion"); *cf. Ball v. Target Corp.*, 2019 U.S. Dist. LEXIS 249761, at *19, 2019 WL 13273217, at *7 (N.D. Ga. Mar. 4, 2019) ("A specific claim of discrimination, such as, racially discriminatory disparate treatment or retaliatory disparate treatment, presents a separate and distinct theory of recovery from other alleged acts of racial discrimination or retaliation, such as, a claim of racially hostile work environment or harassment. Each allegation of a type of discriminatory act raises a new theory of liability which requires administrative exhaustion."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 249765, 2019 WL 13273186 (N.D. Ga. Mar. 29, 2019); *Howard v. City of Robertsdale*, 2004 U.S. Dist. LEXIS 31209, at *20, 2004 WL 5551812, at *7 (S.D. Ala. Dec. 9, 2004) ("The law clearly makes a distinction between hostile work environment claims and claims of adverse employment action as separate types of discrimination under Title VII[.]"), *aff'd*, 168 F. App'x 883 (11th Cir. 2006) (per curiam); *Blalock v. Dale Cty. Bd. of Educ.,* 84 F. Supp. 2d 1291, 1302 (M.D. Ala. 1999) (finding that claims of disparate pay and disparate treatment in EEOC charge did not satisfy exhaustion requirement for hostile work environment claim, because the latter "is a separate and distinct theory of liability with different elements of proof," and plaintiff's EEOC charge did "not allude to or even generally reference a hostile

work environment theory"); *Smith v. Panera Bread*, 2009 U.S. Dist. LEXIS 135970, at *9-10, 2009 WL 10667191, at *4 (S.D. Fla. Aug. 11, 2009) (holding that harassment/hostile work environment claims could not have reasonably been expected to grow out of plaintiff's EEOC charge, which "only alleged a discharge based on race, indicated that no reasons were given for the discharge, and stated that the discrimination began and ended on the same day" plaintiff was discharged); *Baker v. Hafez Corp.*, 2014 WL 1760976, at *6 (S.D. Ala. May 2, 2014) (DuBose, J.) (finding that judicial claims "alleging a broader pattern of workplace discrimination . . . to include such means as recruiting, hiring, training, job assignments, leave, and benefits" could not reasonably have been expected to grow out of EEOC charges that alleged only disparate pay on the basis of national origin).

As detailed above, Austal argues that Plaintiffs' claims of disparate treatment religious discrimination, religiously hostile work environment, and harassment on religious grounds in Counts III through V could not reasonably have been expected to grow out of the allegations in Plaintiffs' EEOC charges, and that Plaintiffs have therefore failed to exhaust their administrative remedies as to those claims. Having reviewed Plaintiffs' EEOC charges and first amended complaint at length, the Court agrees.

Plaintiffs Baugh, Dudley, Skipper, Vela, and Woods filed nearly identical charges of discrimination between November 18, 2021 and April 22, 2022. (*See* Doc. 49-3). In the "discrimination based on" section of their EEOC charges, Plaintiffs

either wrote "religion" or checked the "religion" box.  (*Id.* at 1, 4, 7, 9, 11).  In the

"particulars" section of their EEOC charges, Plaintiffs stated as follows:

Plaintiff Baugh:

I was notified by my employer that it would be requiring all employees to be fully vaccinated. I sincerely hold a religious belief that conflicts with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination mandate, which was denied. On or about October 28, 2021, my employment was terminated.

I believe I have been discriminated against because of my religion, Christianity, in violation of Title VII of the Civil Rights Act of 1964, as amended.[2]

Plaintiff Dudley:

I was notified by my employer that it would be requiring all employees to be fully vaccinated by December 8, 2021. I sincerely hold a religious belief that conflicts with my employer's vaccination requirement. On or about October 22, 2021, my request for a religious accommodation was denied. My employment was terminated on October 27, 2021.

My religion is CHRISTIAN.

I believe my employer failed to accommodate me because of my religion in violation of Title VII of the Civil Rights Act of 1964, as amended.[3]

Plaintiff Skipper:

I was notified by my employer that it would be requiring all employees to be fully vaccinated. I sincerely hold a religious belief that conflicts

---

[2]  Plaintiff Baugh listed October 26, 2021 as the earliest date discrimination took place and October 28, 2021 (the date his employment was allegedly terminated) as the latest date discrimination took place.  (Doc. 49-3 at 1).

[3]  Plaintiff Dudley listed October 22, 2021 (the date his religious accommodation request was allegedly denied) as the earliest date discrimination took place and October 27, 2021 (the date his employment was allegedly terminated) as the latest date discrimination took place.  (Doc. 49-3 at 4).

with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and my need for an accommodation from the vaccination requirement. I requested a religious exemption to Respondents Covid-19 vaccination mandate, which was denied. My employment was terminated on or about October 27, 2021. I believe my employer failed to accommodate me and discriminated against me because of my religion, Christianity, in violation of Title VII of the Civil Rights Act of 1964, as amended.[4]

Plaintiff Vela:

I was notified by my employer that it would be requiring all employees to be fully vaccinated. I sincerely hold a religious belief that conflicts with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination mandate, which was denied. On or about October 27, 2021, my employment was terminated. I believe I have been discriminated against because of my religion, Christianity, in violation of Title VII of the Civil Rights Act of 1964, as amended.[5]

Plaintiff Woods:

I was notified by my employer that it would be requiring all employees to be fully vaccinated. I sincerely hold a religious belief that conflicts with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination mandate, which was denied. On or about November 16, 2021, my employment was terminated. I am Baptist. I believe I have been discriminated against because of my religion in violation of Title VII of the Civil Rights Act of 1964, as amended.[6]

---

[4] Plaintiff Skipper listed October 27, 2021 (the date his employment was allegedly terminated) as both the earliest and the latest date discrimination took place. (Doc. 49-3 at 7).

[5] Plaintiff Vela listed October 23, 2021 as the earliest date discrimination took place and October 27, 2021 (the date his employment was allegedly terminated) as the latest date discrimination took place. (Doc. 49-3 at 9).

[6] Plaintiff Woods listed November 16, 2021 (the date his employment was allegedly terminated) as both the earliest and the latest date discrimination took place. (Doc. 49-3 at 11).

(*Id.*).  Thus, with slight variations, Plaintiffs' EEOC charges reported that they were notified by Austal that all employees would be required to be fully vaccinated in compliance with the company's Covid-19 vaccination mandate, they sincerely hold religious beliefs that conflict with this vaccination requirement, they notified Austal of their religious beliefs and requested religious accommodations or exemptions to the vaccination requirement, their requests for religious accommodations or exemptions were denied, their employment was terminated, and Austal failed to accommodate them and terminated their employment because of their religion in violation of Title VII.  (*See id.*).  The EEOC issued right-to-sue notices to Plaintiffs between April 18, 2022 and June 16, 2022.  (Doc. 49-2).

Based on the foregoing, it is clear that the scope of Plaintiffs' EEOC charges is "limited to Title VII allegations for failure to accommodate (religion)."  *Abbott*, 2023 U.S. Dist. LEXIS 99009, at *46, 2023 WL 3868571, at *15.  Like the substantially similar and/or nearly identical EEOC charges filed by the plaintiffs in *Abbott*, the EEOC charges filed by the Plaintiffs in this case make no implicit or explicit reference to "Title VII . . . hostile work environment, harassment, or disparate treatment based on their religious beliefs . . . ."  *Id.*, 2023 U.S. Dist. LEXIS 99009, at *46, 2023 WL 3868571, at *16.  Indeed, Plaintiffs' EEOC charges neither allege nor suggest religious-based discrimination under any theory separate and apart from their claim that Austal failed to reasonably accommodate their religious beliefs that conflicted with Austal's requirement that all employees be vaccinated against Covid-19 and terminated their employment as a result.  Plaintiffs' EEOC charges in no way suggest

a broader pattern of religious-based disparate treatment (as alleged in Count III),[7] nor do they in any way allude to the existence of a hostile work environment or religious-based harassment by anyone at Austal (as alleged in Counts IV and V). Instead, Plaintiffs' EEOC charges mention *only* Austal's failure to accommodate their religious accommodation/exemption requests with respect to the company's COVID-19 vaccination mandate and the resulting termination of their employment. Moreover, while the factual allegations relevant to Counts III through V of the first amended complaint encompass a significantly broader timeframe, Plaintiffs' EEOC charges indicate that the discrimination complained of therein began and ended within a very short period of time on or near the date each Plaintiff's employment was terminated.

Thus, Plaintiffs' arguments that each of their Title VII claims are sufficiently intertwined so as to fall within the allowable judicial scope of the complaint are unconvincing. As summarized by the Court in <u>Abbott</u>, "Plaintiffs' characterization of Austal's Covid-19 vaccination mandate -- once identified in EEOC Charges -- as being the catchall 'umbrella' sheltering (and including) all types of discrimination (unidentified, undescribed, and unknown types) to prompt the EEOC to investigate

---

[7] The Court notes that Count III alleges, in part, that "Plaintiffs have been discriminated against by Austal USA because of religious beliefs in the terms of . . . discharge (inactive status and/or termination) . . . ." (Doc. 49 at 36). To the extent Count III can be construed to assert a claim based on the termination of Plaintiffs' employment as a result of Austal's failure to accommodate their religious beliefs, which would fall within the scope of the allegations in Plaintiffs' EEOC charges, such claim is nevertheless subject to dismissal because it is duplicative of the "failure to accommodate" claim in Count I.

each type, to then be alleged in a federal complaint as 'reasonably growing' from such Charges, lacks merit." *Id.*, 2023 U.S. Dist. LEXIS 99009, at \*49-50, 2023 WL 3868571, at \*16.

Plaintiffs' EEOC charges could not reasonably have been expected to prompt the EEOC to investigate claims other than the Title VII claim based on Austal's alleged failure to accommodate Plaintiffs' religious beliefs and Plaintiffs' resulting termination. Plaintiffs' new claims for disparate treatment religious discrimination, religiously hostile work environment, and harassment on religious grounds are not like or related to, nor do they reasonably grow out of, the allegations in Plaintiffs' EEOC charges.[8] Accordingly, Counts III through V of the first amended complaint are due to be dismissed because Plaintiffs failed to file timely EEOC charges with respect to the claims raised in those counts and thus failed to exhaust their administrative remedies as to those claims.[9]

---

[8] The record indicates that, with the exception of Plaintiff Dudley, Plaintiffs were represented by counsel during their EEOC proceedings. *(See* Doc. 49-2). The Court notes that while EEOC charges must be liberally construed when prepared without the assistance of counsel, *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005) (per curiam), this policy does not apply when the charge was prepared by or with the assistance of counsel. *Blalock*, 84 F. Supp. 2d at 1302. In any event, even if Plaintiffs' EEOC charges are liberally construed, the religious-based disparate treatment, hostile work environment, and harassment claims raised in Counts III through V of the first amended complaint could not reasonably have been expected to arise from the allegations in those charges.

[9] Because the claims of religious-based disparate treatment, hostile work environment, and harassment in Counts III through V of the first amended complaint exceed the scope of the charges Plaintiffs filed with the EEOC, the Court need not reach Austal's additional argument that these claims are untimely and unexhausted because Plaintiffs did not attempt to assert them until they sought leave to file a first amended complaint in November 2022. (*See* Doc. 50 at 13-14).

**B.**     **The First Amended Complaint States A Plausible Claim For Invasion of Privacy (Intrusion Upon Solitude/Seclusion).**

Austal argues that Plaintiffs fail to state a claim upon which relief can be granted for invasion of privacy by wrongful intrusion upon their solitude or seclusion in Count VI because the first amended complaint does "not provide any specific facts" as to each of the named Plaintiffs "to support their respective invasion of privacy claim." (Doc. 50 at 15).  According to Austal:

> Plaintiffs contend that Austal – generally speaking – committed a number of wrongdoings which resulted in an invasion of their privacy. In short, they allege that their "private information . . . pertaining to confidential medical information, such as their vaccination status, medical complications, and general medical information, were repeatedly disclosed publicly through a multitude of mediums that was permitted, endorsed, and/or permitted [sic] by Defendant." . . . Fatal to their claim is the fact that they did not provide any specific facts to support their respective invasion of privacy claim. For example, as to *each Plaintiff specifically*: what information was shared; who at Austal shared this information; when was this information shared by each such person who shared it, and how was it "repeatedly" shared; how did each such person publicly share this information, *i.e.*, through what "multitude of mediums"; and how did Austal permit or endorse the alleged disclosure, *i.e.*, how is Austal liable for an intentional tort? Noticeably absent from the First Amended Complaint are any such details. This dearth of information is insufficient to state an invasion of privacy claim.

(Id. (emphasis in original)).

Austal notes that the instant motion "is not the first time that Plaintiffs are being made aware of their pleading deficiencies." (*Id.* at 16).  Austal cites the Court's April 10, 2023 order granting leave for Plaintiffs to file a first amended complaint, which stated the following with respect to Plaintiffs' proposed invasion of privacy claim:

[T]here are no specific allegations as to these defendants' unlawful disclosure of *any of the five (5) Plaintiffs'* "vaccination status, medical complications, and general medical information" and/or "publicly [sic] display of Plaintiffs' medical information regarding their medical capabilities, medical preferences, and medical status." Plaintiffs' allegations are general, not specific to the Plaintiffs in this case, and so precisely what the defendants did as to these Plaintiffs is unknown. . . .

Given the individualized and fact-dependent nature of this category of invasion of privacy, the conclusory allegations are insufficient. But this lack of specificity does not support futility. Instead, it supports amendment which should be "freely given" in the absence of countervailing factors. Due to the absence of countervailing factors, Plaintiffs' motion for leave to amend to file a First Amended Complaint is **GRANTED** as to this claim on the condition that Plaintiffs shall file, . . . a new first amended complaint which includes sufficient factual allegations specific to the Plaintiffs and each of the defendants' purported invasion of privacy acts and/or conduct.

(Doc. 48 at 19-20 (emphasis in original)).

Austal asserts that Plaintiffs "disavowed and ignored the Court's direction" because their operative first amended complaint pleads "*nothing more* than they had already stated" in their proposed first amended complaint, "which the Court had already told them was insufficient . . . to support their respective invasion of privacy claims." (Doc. 50 at 16 (emphasis in original)). Austal contends that Plaintiffs' invasion of privacy claim "lacks any factual specificity" and "simply 'tenders naked assertions devoid of further factual enhancement,' which are insufficient to lodge a claim upon which relief can be granted." (*Id.* at 19 (citation omitted)).

In response, Plaintiffs state:

On the face of Plaintiffs' First Amended Complaint, the term "Plaintiffs" was defined to include Plaintiff Baugh Jr., Plaintiff Dudley, Plaintiff Skipper, Plaintiff Vela, and Plaintiff Woods. . . . Furthermore, there are numerous facts contained within the First Amended Complaint that are individually tailored to Plaintiff Baugh Jr., Plaintiff Dudley, Plaintiff

Skipper, Plaintiff Vela, and Plaintiff Woods, which support a claim for relief that exceeds beyond a "speculative level" for each named Plaintiff.

(Doc. 53 at 22).

In Count VI of the first amended complaint, Plaintiffs claim that Austal invaded their privacy by intruding upon their solitude or seclusion in violation of Alabama state law. (Doc. 49 at 41-42). Alabama has adopted the definition of the "wrongful-intrusion branch of the invasion-of-privacy tort" found in The Restatement (Second) of Torts, which states that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Johnston v. Fuller*, 706 So. 2d 700, 702 (Ala. 1997) (quoting Restatement (Second) of Torts § 652B (1977)). A defendant is subject to liability for wrongful intrusion "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.*

The wrongful intrusion may be a physical intrusion into a place of seclusion, or a wrongful intrusion into the plaintiff's private affairs. *Id.*; *see also Kelley v. Worley*, 29 F. Supp. 2d 1304, 1311 (M.D. Ala. 1998) ("One may invade another's privacy through either an intrusion upon a physical space or by an invasion of one's 'emotional sanctum'; the law prohibits a wrongful intrusion into either of these areas of privacy.") (citing *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 711 (Ala. 1983)). "An intrusion upon solitude or seclusion can arise out of remarks about private matters made to a third party." *Sorrells v. Lake Martin, Inc.*, 2011 U.S. Dist.

LEXIS 14001, at *16, 2011 WL 627049, at *6 (M.D. Ala. Feb. 11, 2011). There may also be a wrongful intrusion if "the means of gathering" information about the plaintiff "are excessively objectionable and improper[.]" *Johnston*, 706 So. 2d at 702; *see also Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988) (indicating that wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private).

"Specifically then, '[t]he tort of invasion of privacy/intrusion requires a plaintiff to allege and prove '[1] the intentional wrongful intrusion [2] into the [plaintiffs'] private activities [3] in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" *Abbott*, 2023 U.S. Dist. LEXIS 99009, at *62-63, 2023 WL 3868571, at *21 (quoting *Carter v. Innisfree Hotel, Inc.,* 661 So. 2d 1174, 1178 (Ala. 1995)). "To withstand a motion to dismiss, a plaintiff may allege a 'physical intrusion into a place in which the plaintiff has secluded himself,' 'an invasion of psychological solitude,' or 'examination into [the plaintiff's] private concerns'—so long as the plaintiff also asserts that the invasion would be offensive to a reasonable person." *Hope v. BSI Fin., Inc.*, 2012 U.S. Dist. LEXIS 153971, at *16, 2012 WL 5379177, at *5 (N.D. Ala. Oct. 26, 2012) (quoting *Phillips*, 435 So. 2d at 710–11).

In Count VI of their first amended complaint, Plaintiffs allege:

Plaintiffs' private medical information at Defendant's businesses pertaining to confidential medical information, such as their vaccination status, medical complications, and general medical information, were repeatedly disclosed publicly through a multitude of mediums that was permitted, endorsed, and/or permitted by Defendant.

Austal USA's actions infringed upon the intrusion upon seclusion theory based upon their wrongful intrusion into Plaintiffs' private activities in such a manner that it caused severe outrage, mental suffering, shame, and/or humiliation to . . . Plaintiffs and would otherwise cause such effects to be felt by a person of ordinary sensibilities.

. . . Plaintiffs' confidential medical information was shared publicly by Defendant in an effort to coerce and otherwise compel Plaintiffs to comply with its vaccination requirement. Austal USA's conduct to collect, disseminate, and failure to safeguard . . . Plaintiffs' medical information regarding their medical capabilities, medical preferences, and medical status violates the ordinary decencies recognized in our society.

The actions [of] Austal USA, as set out herein, violate Alabama state law.

As a result of the actions of Austal USA, . . . Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(Doc. 49 at 41-42).

The first amended complaint also includes the following allegations in connection with Plaintiffs' invasion of privacy claim:

This lawsuit is grounded in Defendant's . . . intrusive conduct . . . .

\*\*\*

. . . Plaintiffs . . . were told daily to get the vaccine or they were going to be fired and that they should just resign instead. Plaintiffs . . . during this time felt anxious, nervous, frustrated, and couldn't eat because of the stress and pressure placed upon them by their employer since Defendant was attempted to compel Plaintiffs to set aside their sincerely held religious beliefs as Christians at the expense of their career and livelihood at Defendant's business.

In an effort to mandate compliance for this decision, Austal USA engaged in conduct to enforce compliance of this internal vaccine policies among its leadership staff. Austal began implementing informal procedures that prohibited travel of unvaccinated persons, threatening

the jobs of individuals on the leadership team, ostracizing unvaccinated persons from group meetings, and making jokes of persons who expressed concern in receiving the vaccine for religious or medical reasons. Plaintiffs, as well as several others, who were identified as Austal leaders that expressed concern were confronted personally and expressly told that "they should either get the vaccine or quit their jobs." Some individuals were told by Austal USA Leaders that "no other corporation would hire them for being unvaccinated, so these individuals were best off to receive the vaccine against their wishes." This conduct took place *before* and *after* Austal's general employee vaccine policy, which was announced on October 1, 2021.

***

On October 22, 2021, over 200 Austal USA employees who had not yet taken one of the experimental vaccines, were rounded up, put in a room, told to put their phones away, and to not record. At that point, an Austal USA representative, President of Austal USA Rusty Murdaugh stated, in part, that "all of your exemption requests have been denied" and that the unvaccinated employees needed to receive one of the vaccines by the date of October 27, 2021, or they would be terminated. When one employee asked about whether they would still receive their yearly bonus, which was set to be paid out on October 29, 2021, the President Rusty Murdaugh said, "if you don't get the vaccination by October 27, 2021, and you are obstinate or difficult, then you won't get your bonus." President Rusty Murdaugh went on to say, "if you're a jerk or if you hurt this family, I'm taking it away from you."

***

Every week from September 2021 through October 2021, Austal USA Leaders had in-person meetings for only those Christians unvaccinated persons where Defendant's leadership made jokes at Plaintiffs expense, villainized Plaintiffs, and disregarded/dismissed Plaintiffs religious beliefs and medical complications. Even the President of Austal USA Rusty Murdaugh would make disparaging comments such as "oh wow, everyone is religious now?" Austal USA Leaders sprayed Lysol on unvaccinated employees' desks/cubicle when they left the area or say they would want "beepers" to know when an unvaccinated person was nearby. These actions were often accompanied with highly offensive vulgar language almost weekly, and "if they did not like it, they can head for the fucking door!" Plaintiffs and other unvaccinated persons were told if they didn't get the vaccine "their positions will be terminated,"

"they will not be hired anywhere else," and "Austal had begun the process of searching for their replacement," and that they aren't religious on meritless grounds. Austal USA Leaders and employees would frequently belittle Plaintiffs' and other Christian's intelligence levels and called them "anti-vaxxers", stated "they had the plague", stated "they should be in quarantine", and stated "they were going to kill themselves, their families, and others because of their refusal to get the vaccine." Defendant's actions were so persistent and severe that it undermined Plaintiffs ability to effectively perform their job duties and impacted their family life.

***

Even though Plaintiff Baugh Jr., Plaintiff Dudley, Plaintiff Skipper, Plaintiff Vela, and Plaintiff Woods did not specifically indicate, explicitly or implicitly, their vaccination status, vaccination preference, or any other confidential medical information prior to the announcement of Defendant's COVID-19 Vaccination Mandate, Plaintiffs' respective supervisors and managers would elicit statements informing all unvaccinated individuals to receive the vaccination or be subject to termination. These supervisors and managers would specifically identify Plaintiff Baugh Jr., Plaintiff Dudley, Plaintiff Skipper, Plaintiff Vela, and Plaintiff Woods within their respective workgroup, singled these individuals out as unvaccinated persons with religious beliefs, and subsequently communicated each Plaintiffs' respective confidential medical information without their consent.

Defendant's executives seemingly turned the vaccinated cohort of employees against the unvaccinated cohort of employees at Austal USA by instigating fights and/or drama. Austal USA Leaders would daily pry into the personal medical information and preferences of all members of their workgroup and subsequently report such information to their respective supervisors. Plaintiffs interpreted this policy as "turning friends against friends" and Defendant's seemingly manipulated Plaintiffs' once friendly coworkers into belligerent individuals who would make offensive and degrading jokes about Plaintiffs' religious beliefs, reprimand Plaintiffs for small or trivial matters to punish them for their religious views.

. . . Defendant's vaccinated workforce was collecting confidential medical information of their underling employees, disseminating the obtained information to multiple other employees without Plaintiffs' consent or knowledge, and for those unvaccinated employees who were identified as dissenters. Defendant's supervisors and managers would

intentionally target, harass, and/or frequently admonish Plaintiffs and other like-situated persons at Austal USA in a public display to embarrass or shame them. . . .

After Plaintiffs . . . were identified through these backchannels of data collection and dissemination without their knowledge or consent, Plaintiffs . . . were demonized. Plaintiffs were specifically targeted in meetings, publicly shamed for their privately held beliefs and confidential medical information among their workgroup and across the entire company, be forcibly subject to meetings for only unvaccinated persons . . . .

Plaintiffs feel Defendant was monitoring their private technological data or communications as well as those unvaccinated persons at its facilities to identify who remained unvaccinated so that Defendant's managerial staff could bring them into compliance with Defendant's COVID-19 Vaccination Mandate through punitive actions that would result in public embarrassment or shame. Plaintiffs felt Defendant eavesdropped on their and other unvaccinated employees' private conversations, surveilled these employees, and accessed and/or monitored private medical data, statistics, information, and/or messaging of their personal phones, computers, and/or electronic devices, which were compiled in reports by Defendant and discussed for months at meetings among several employees. Plaintiffs' basis for this contention was determined through Defendant's access to information not known or disclosed to third parties by Plaintiffs given its personal and sensitive matter, but was somehow readily available, known, and frequently utilized by Plaintiffs' supervisors and managers against each Plaintiff and believed to be a harassment tactic to coerce vaccination compliance.

Plaintiffs contend there are video cameras in the bathrooms at Austal USA's Mobile, Alabama, facility that have been used to harass and or punish individuals who share the same Christian beliefs as they do. Unvaccinated persons were also targeted and cited for taking too long of bathroom breaks whereas vaccinated workers were not reprimanded even when taking the same amount of time. Plaintiffs felt uncomfortable, embarrassed, and were constantly afraid of when they would be admonished by Defendant's vaccinated managerial workforce next due to the specific targeting of Christians in opposition of Defendant's COVID-19 Vaccination Mandate that was pervasive during Fall 2021.

***

. . . Defendant's COVID-19 Vaccination Mandate, COVID-19 Masking Policy, COVID-19 Social Distancing Policy, and COVID-19 Testing Policy, were all unreasonably . . . intrusive because of the means by which Defendant subjected Plaintiffs' . . . to obtain information and enforce compliance of Defendant's COVID-19 policies and procedures. . . . :

> . . . (ii) the medical tests and masking policies tests were physically intrusive and degrading to Plaintiffs; . . . (vi) coerced submission to a regime of Government mandated medical testing has a severe emotional and mental impact on Plaintiffs; (vii) the medical tests and masking policies would only be administered to Plaintiffs and other unvaccinated Christians . . . ; (viii) Plaintiffs were isolated and ostracized from the majority of their peers to be subject to this unreasonable testing, social distancing, and masking requirement while Austal USA's vaccinated workforce was not subject to these policies . . . ; (ix) Austal USA's actions to compel its employees to undergo a medical procedure without providing informed consent to the effects of the medical procedure infringes on Plaintiffs' fundamental rights to personal autonomy, bodily integrity, and right to refuse medical treatment; . . . (xiv) the collection, dissemination, reporting, surveillance, and/or other actions taken to disseminate, generate, and identify facility data, reports, and/or statistics of unvaccinated employees' confidential information, which Defendant had failed to adequately safeguard from the public and its employees.

Defendant's COVID-19 Vaccination Mandate, COVID-19 Masking Policy, COVID-19 Social Distancing Policy, and COVID-19 Testing Policy . . . unreasonably intruded upon Plaintiffs' . . . privacy and solitude.

Defendant required any vaccinated employee to prominently display a vaccinated logo-sticker, which was provided to each vaccinated employee, to wear on their hard hat. Plaintiffs and other unvaccinated individuals did not receive the vaccination logo-sticker. This distinction allowed Austal USA Leaders to further identify Plaintiffs and other unvaccinated employees easily despite Plaintiffs never revealing their confidential medical information to any person. . . .

***

> Plaintiffs . . . were targeted on the basis of their religious faith as Christians and subject to Defendant's pervasive intrusions and harassing actions to ensure compliance of its . . . COVID-19 Vaccination Mandate.

(*Id.* at 2, 7-9, 24, 28-34).

Thus, Plaintiffs allege that Austal intruded upon their solitude or seclusion by wrongfully subjecting them to intrusive medical testing; accessing their private confidential medical information without their consent or knowledge; obtaining, collecting, disseminating, and failing to safeguard their private confidential medical information; monitoring their private communications without their knowledge; eavesdropping on their private conversations with other employees and when they used their personal electronic devices; and surveilling them in sensitive and private locations. Plaintiffs also allege that Austal compiled their private medical information into reports, which were discussed with and disseminated to other employees at the Austal facility as a means to isolate, ostracize, coerce, and compel Plaintiffs and other unvaccinated employees to comply with Austal's vaccine mandate. Plaintiffs further allege that Austal involuntarily communicated their confidential medical information by requiring meetings attended only by unvaccinated employees, and by implementing a "vaccination logo-sticker" program to allow easy identification of "Plaintiffs and other unvaccinated employees . . . despite Plaintiffs never revealing their confidential medical information to any person."

Further, Plaintiffs allege that they were "subject to Defendant's pervasive intrusions and harassing actions to ensure compliance" with Austal's COVID-19

vaccination mandate.  Plaintiffs also allege that Austal wrongfully intruded into their private activities in a manner that caused them "severe outrage, mental suffering, shame, and/or humiliation" and "would otherwise cause such effects to be felt by a person of ordinary sensibilities."  Finally, Plaintiffs allege that Austal's actions caused suffering, distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and economic losses.

Having reviewed the first amended complaint at length, the undersigned concludes that Plaintiffs have included sufficient factual allegations to state a facially plausible claim for invasion of privacy based on intrusion upon their seclusion or solitude.  The invasion of privacy allegations asserted by Plaintiffs Baugh, Dudley, Skipper, Vela, and Woods in this case are substantially similar to the information alleged by the fifty-four plaintiffs in *Abbott*, which this Court found "sufficient . . . to support the facial plausibility of their invasion of privacy (intrusion upon seclusion/solitude) claim."  *Abbott*, 2023 U.S. Dist. LEXIS 99009, at *66, 2023 WL 3868571, at *22; *see also Hughes v. Wal-Mart Stores, East LP*, 2018 U.S. Dist. LEXIS 99190, at *13-14, 2018 WL 3352974, *5 (M.D. Ala. June 12, 2018) ("Plaintiff bases this claim upon . . . Defendants discussing Plaintiff's alleged unfitness with her coworker and in front of Wal-Mart customers [and] . . . Defendants discussing information regarding Plaintiff's health, including the status of her prescriptions for pain medication, with her co-workers. . . . [T]he Court concludes that Plaintiff states a claim for invasion of privacy based upon intrusion, or a claim for intrusion upon seclusion, which is plead sufficiently to survive Defendants' Motions to Dismiss.");

*Drew v. Quest Diagnostics*, 992 F. Supp. 2d 1177, 1188 (N.D. Ala. 2014) ("To support their invasion of privacy claim, plaintiffs allege that defendants 'committed a wrongful intrusion upon the Plaintiffs' solitude or seclusion by improperly disclosing untrue and incorrect health information, namely Kenneth Drew's HIV status and Herpes status.' . . . [T]hey assert that the claim is based upon the improper disclosure of 'untrue and incorrect health information,' and that is indeed what the Amended Complaint alleges. The court agrees that the invasion of privacy claim can proceed based upon the disclosure of incorrect information[.]").

Austal makes no real attempt to argue that, as a general matter, the facts alleged are insufficient to support the facial plausibility of a claim for invasion of privacy based on wrongful intrusion. Instead, Austal takes issue with the specificity of Plaintiffs' allegations and focuses on the Court's statement in the April 10, 2023 order that the invasion of privacy allegations in Plaintiffs' proposed first amended complaint were insufficient because the allegations were "general, *not specific to the Plaintiffs in this case*, and so precisely *what* the defendants did as to *these* Plaintiffs is unknown." (Doc. 48 at 19 (emphasis in original)). Austal argues that the first amended complaint fails to state a claim for invasion of privacy because it does not provide "sufficient factual allegations specific to the Plaintiffs and each of the defendants' purported invasion of privacy acts and/or conduct." (Doc. 50 at 16 (citing Doc. 49 at 19-20)).

Austal's arguments are not persuasive. First, contrary to Austal's assertion, the invasion of privacy allegations in Plaintiffs' operative first amended complaint

are not "virtually identical" to those in their proposed first amended complaint. On the contrary, the operative complaint contains a number of additional allegations relating to invasion of privacy that were not included in the proposed amendment that the Court addressed in the April 10, 2023 order. Further, as Plaintiffs note, the first amended complaint defines the term "Plaintiffs" to include Plaintiffs Baugh, Dudley, Skipper, Vela, and Woods collectively, and almost all of the above-listed allegations connected to Plaintiffs' invasion of privacy claim are *applicable to* Baugh, Dudley, Skipper, Vela, and Woods - although many of the allegations undoubtedly apply to other former Austal employees as well. Also, as mentioned above, the invasion of privacy allegations in the first amended complaint complaint here are substantially similar to those of the plaintiffs in *Abbott*, which this Court recently found to be sufficient to state a facially plausible claim for relief despite the relative paucity of plaintiff-specific invasion of privacy allegations and the fact that most of the relevant allegations were generally asserted on behalf of all fifty-four plaintiffs. *See Abbott*, 2023 U.S. Dist. LEXIS 99009, at *64-66, 2023 WL 3868571, at *21. When taken as true and viewed in the light most favorable to Plaintiffs at this juncture, the relevant factual allegations in the first amended complaint are sufficiently detailed and specific to "nudge[ Plaintiffs' invasion of privacy] claims across the line from conceivable to plausible[.]" *See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Accordingly, the undersigned recommends that Austal's motion to dismiss Plaintiffs' invasion of privacy claim in Count VI be denied.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Austal's motion to dismiss Counts III - VI of Plaintiffs' first amended complaint (Doc. 50) be **GRANTED IN PART** and **DENIED IN PART**, as follows:

Austal's motion to dismiss Plaintiffs' Title VII claims for disparate treatment religious discrimination (Count III), hostile work environment (Count IV), and harassment on religious grounds (Count V) is due to be **GRANTED** because Plaintiffs failed to exhaust their administrative remedies with respect to those claims.

Austal's motion to dismiss Plaintiffs' claim for invasion of privacy by wrongful intrusion upon their solitude or seclusion in violation of Alabama state law (Count VI) is due to be **DENIED** because Plaintiffs stated a facially plausible claim for relief with respect to that claim.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was

informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **20th** day of **July, 2023.**

                     **/s/ WILLIAM E. CASSADY**
                    **UNITED STATES MAGISTRATE JUDGE**